Dariush G. Adli, Esq. (SBN: 204959)
  adli@adlilaw.com
Drew H. Sherman, Esq. (SBN: 237045)
  drew.sherman@adlilaw.com
ADLI LAW GROUP, P.C.
444 South Flower Street, Suite 3100
Los Angeles, California 90071
Telephone: 213-623-6546
Facsimile: 213-623-6554

Attorneys for Marina Pahomova

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA PAHOMOVA, a/k/a MARINA PAMO, an individual, | Case No. |
| *Plaintiff*, | **COMPLAINT FOR DAMAGES** |
| v. | **DEMAND FOR JURY TRIAL** |
| MAXIM, INC., a Delaware corporation; BRIAN B. HAYES, an individual; NICKIE BOGART, an individual; DIRK STEENEKAMP, an individual; DHS MEDIA GROUP, a business entity of unknown form; UNTAPPED WORLD PUBLISHING, LTD, a business entity of unknown form; SWIMWEAR NETWORK INTERNATIONAL, LLC, a Florida limited liability company; and 917 PR, a business entity of unknown form; and DOES 1-15, inclusive, | |
| *Defendants*. | |

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

COMPLAINT

2494.201

Plaintiff, Marina Pahomova, ("Plaintiff") complains and alleges the following claims against Defendants, Maxim, Inc. ("Maxim"), BRIAN B. HAYES ("Hayes"), Nickie Bogart ("Bogart"), Swimwear Network International, LLC ("SNI"), 917 PR unknown registration entity ("917PR"), Dirk Steenekamp ("Steenekamp"), DHS Media Group ("DHS"), and Untapped World Publishing, Ltd. ("UWP"), (each a "Defendant" and collectively the "Defendants"):

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for original jurisdiction over Federal Claims in that this action arises under a claim for copyright infringement.  The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 for original jurisdiction over civil actions where the matter in controversy exceeds to the sum and value of $75,000 and is between citizens of different states.  This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

3.      Plaintiff is informed and believes, and thereon alleges that this Court has personal jurisdiction over the Defendants because they have a continuous, systematic, and substantial presence within this judicial district.

4.      Plaintiff is informed and believes, and thereon alleges that this Court has personal jurisdiction over the Defendants because Defendants also did business in this judicial district, now and prior to the date hereof, with respect to the causes of action on which the Complaint is based.

5.      Plaintiff is informed and believes, and thereon alleges that this Court has

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

1

2494.201

personal jurisdiction over the Defendants because the Defendants also took actions which caused effects here in this judicial district such as converting Plaintiff's property.

6.      Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) and §§ 1400(a) and (b) because Defendants reside in this district, conduct business in this district, and a substantial part of the events giving rise to the causes of action in this Complaint occurred in this district.

7.      Upon information and belief, each Defendant was the agent, servant, representative and/or employee of each of the other Defendants, and that in doing the things hereinafter alleged, each Defendant was acting within the course and scope of the Defendant's authority, with the permission, knowledge, consent and ratification of each of the other Defendants.

8.      Upon information and belief Defendants, and each of them, conspired and agreed among themselves to the acts complained of herein and were, in doing the acts complained of herein, acting pursuant to said conspiracy, and that each of the Defendants sued herein is jointly and severally responsible and liable to Plaintiff for the damages alleged herein.

## **PARTIES**

9.      Plaintiff is a resident of Los Angeles, California.

10.      Maxim is a Delaware corporation with its principal place of business in New York, New York, conducting business in Los Angeles, California.

11.      Plaintiff is informed and believes, and thereon alleges that Hayes is a resident of Las Vegas, Nevada, conducting business in Los Angeles, California.

12.      Plaintiff is informed and believes, and thereon alleges, that Bogart is a resident of Las Vegas, Nevada, conducting his business in Los Angeles, California.

13.      Plaintiff is informed and believes, and thereon alleges, that SNI in inactive by the state registration entity that was initially registered in Florida, conducting business in Los Angeles, California.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

14.     Plaintiff is informed and believes, and thereon alleges, that 917 PR is an unknown registration entity, conducting business in Los Angeles, California.

15.     Plaintiff is informed and believes, and thereon alleges, that Steenekamp is a citizen and resident of South Africa, conducting business in Los Angeles, California

16.     Plaintiff is informed and believes, and thereon alleges, that DHS is a South African business of unknown formation, with its principal place of business in South Africa, conducting business in Los Angeles, California

17.     Plaintiff is informed and believes, and thereon alleges, that UWP is a South African business of unknown formation, with its principal place of business in South Africa, conducting business in Los Angeles, California

18.     Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, partnership, or otherwise of each of the Defendants sued herein as Does 1 through 15, inclusive, and therefore sues said Defendants by such fictitious names.  Such unnamed defendants include, but are not limited to: (a) officers and/or directors who acted in concert with Defendants against Plaintiff; (b) other entities affiliated with Defendants that acted in concert with Defendants against Plaintiff; and (c) individuals or entities with whom Defendants acted in concert with Defendants against Plaintiff.  Plaintiff reserves the right to name such Does as discovery from Defendants reveal their identities.

19.     Plaintiff is informed and believes and thereon alleges that each of the Defendants named herein as a Doe was and is negligently, intentionally, or both negligently and intentionally responsible in some manner for the occurrences herein alleged, and the injuries and damages suffered by Plaintiff as herein alleged were the direct and proximate result of, and caused by the acts and omissions of the Defendants, as applicable.

20.     Defendants Hayes, Bogart, and Steenekamp including the applicable Doe Defendants, are alleged to be co-conspirators with each other, in that each agreed to

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

1 participate and participated in the furtherance of the objective of a civil wrong as

2 alleged in this Complaint.

3      21.    Defendants Maxim, DHS, UWP, SNI, 917PR, and the applicable Doe

4 Defendants, are alleged to be co-conspirators with each other, in that each agreed to

5 participate and participated in the furtherance of the objective of a civil wrong as

6 alleged in this Complaint.

7      22.    Plaintiff is informed and believes and thereon alleges that each Defendant

8 named in the two (2) different conspiracies mentioned in paragraphs 20 and 21 above,

9 entered into a conspiracy and agreement with the other respective Defendants and/or

10 subsequently joined said conspiracy and ratified the prior acts and conduct of the

11 Defendants who had previously entered into said conspiracy.  Plaintiff is currently

12 unaware of when each respective Defendant joined said respective conspiracy and,

13 upon information and belief, alleges that the respective Defendant joined said

14 respective conspiracy and, upon information and belief, alleges that all respective

15 Defendants have knowingly, maliciously, and willfully entered into said respective

16 conspiracy, which continues until this day.  The purposes of these ongoing

17 conspiracies include, but are not limited to, the wrongs alleged herein.  All respective

18 Defendants' acts and failures to act as alleged herein were perpetrated in furtherance

19 of the ongoing respective conspiracy to which they entered.

20      23.    Plaintiff is informed and believes, and thereon alleges that Defendant

21 Steenekamp and DOES 1 through 5 ("Individual Defendants") are, and at all relevant

22 times herein were, owners of all or a controlling interest of DHS and UWP, and DOES

23 6 through 10 (along with Maxim the "Entity Defendants"), and Hayes and Bogart were

24 owner of SNI and 917 PR and DOES 10 through 15, and that there existed between

25 the Individual Defendants and Entity Defendants, and each of them, a unity of interest

26 and ownership, such that any individuality or separateness of such Defendants never

27 existed or has ceased, and that the Entity Defendant are the alter egos of the Individual

28 Defendants, and each other.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

ADLI LAW GROUP, P.C.
www.adllaw.com
(213) 623-6546

24.     To the extent that certain acts and omissions were perpetrated by certain Defendants, the remaining respective Defendant or Defendants confirmed and ratified said acts and omissions, as applicable.

25.     Whenever and wherever reference is made in this Complaint to any act by a respective Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each other respective Defendant acting individually, jointly, and severally, as applicable.

26.     Whenever and wherever reference is made to individuals who are not named as Plaintiff or Defendants in this Complaint but were employees/agents of each other Defendant, such individuals acted on behalf of each Defendant within the scope of their employment.

27.     Plaintiff is informed and believes and thereon alleges that respective Defendants were associated or affiliated with one or more of the other respective DOE Defendants in connection with matters and conduct sued upon herein, as applicable. Plaintiff alleges that each respective Defendant was acting with one or more of the other respective DOE Defendants pursuant to a common scheme, course of action, enterprise or conspiracy and each respective Defendant is liable to Plaintiff for the events happenings and damages alleged herein, as applicable.

28.     Plaintiff is informed and believes and thereon alleges that Individual Defendants dominated and controlled the business affairs of the Entity Defendants, and each of them.  As a result, adherence to the fiction of a separate existence between such Defendants would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

29.     Plaintiff is informed and believes and thereon alleges that the Court can pierce the corporate veil of the Entity Defendants and hold Individual Defendants individually liable because of the improper activities as follows:

      a.     Failed to maintain or observe corporate formalities;

      b.     Engaged in fraudulent behavior;

2494.201

c.  Abandoned maintenance of registration status of entities with no proper registration to begin with;

d.  Failed to make and maintain proper accountings and records;

e.  Individual Defendants held out the Entity Defendants as legitimately registered;

f.  Individual Defendants commingled corporate funds with their personal funds;

g.  Individual Defendants used their residence as the Entity Defendants' business addresses;

h.  Individual Defendants used and promoted the Entity Defendants to deceive Plaintiff, models, and the general public, into believing Individual Defendants were legitimate when they were and are not; and

i.  Individual Defendants used the Entity Defendants to maintain illegally-acquired revenue on behalf of the Individual Defendants.

30.  Based upon the foregoing, Plaintiff is informed and believes, and thereon alleges that the Entity Defendants are the alter egos of the Individual Defendants and each other, therefore, Plaintiff may proceed against all such respective Defendants directly, as they are each liable jointly and severally for any and all damages suffered by Plaintiff.

31.  Whenever appearing in this Complaint, all references to "Defendant(s)" is intended to be, and shall be deemed, a reference to all such respective Defendants in this action, and each of them, named and unnamed, including all fictitiously named Defendants.

## **GENERAL ALLEGATIONS**

32.  Plaintiff is a model.

33.  Hayes had performed photoshoots for some of Plaintiff's friends who were also models, and Plaintiff was informed by her friends that Hayes assisted in

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

getting the pictures from his photoshoots of them into major worldwide publications, like Maxim.

34.     In 2016, on his Facebook page, Hayes routinely touted his close connections to, and working relationship with, Maxim and was soliciting models to contact him so he could submit the photographs he took of them for consideration in Maxim.  He also widely held out to the public that, if the models were accepted, he would ensure that they would be subsequently distributed by Maxim's global publishing network as he claimed to have done previously with other models.

35.     Plaintiff is informed and believes, and thereon alleges, that on July 4, 2016, Hayes' Facebook page stated that Hayes was "[h]onored to be the exclusive cover photographer for the new Maxim Middle East [Dubai]… 1st issue is on the newsstands now".

36.     On August 6, 2016 Hayes' Facebook page stated that "… Some magazines like Maxim [South Africa] and Maxim [Middle East] will ONLY publish my photos on their covers. We are proud to provide FREE submissions for those models that book photoshoots with me…."  On or about the same time, Hayes also represented that he had a free public relations service that he offered to models to submit them to the various publications.

37.     On or about the same time, Hayes stated on his Facebook page: "…. I have photographed countless models for magazine covers and spreads over past 20 years and I have never encountered a publishing company to be publishing fake or fraudulent magazines. If anyone is questioning the credibility of 917pr's publishings please feel free to contact any of the magazines yourself for verification. 917pr has many new international titles coming out in the next few months including covers for Playboy, Muscle & Fitness Hers, Maxim and For Him Magazine ("FHM").  We firmly believe that a PR's Firm's credentials is solely based on the company's ability to get their clients published. Therefore, every month 917pr posts our clients covers and spreads on IG and FB under 917PR for everyone to review… Lastly, 917pr nor I

ADLI LAW GROUP, P.C.

www.adlilaw.com

(213) 623-6546

7

2494.201

will ever solicit models for paid photo shoots or PR as all our clients contact us directly for our services. 917PR is still a free service, but we will soon be charging a small monthly submission fee to cover overhead and cost due to the increase in our new client base. The 917pr's contract fee will only amount to about 20% of what other PR firms are charging therefore we will still be saving our clients thousands in PR cost."

38.    Plaintiff contacted Hayes after seeing his Facebook page containing his promotional postings of his work in order to inquire about having Hayes submit her to Maxim and other publications as a model.

39.    Hayes responded and represented to Plaintiff that he could get her into Maxim and other publications but that she would need to have Hayes perform a photoshoot of Plaintiff so that Hayes would have the right kind of photographs of Plaintiff to submit to Maxim and other publications.

40.    Before any photographs were taken, Hayes emailed Plaintiff on February 23, 2016 and represented to the Plaintiff that any photographs taken of Plaintiff would be co-owned by Hayes and Plaintiff, which the Plaintiff could use for self-promotion, but any exploitation of the photographs, other than self-promotion, would require Hayes' permission.  Hayes also stated to Plaintiff in that email that Hayes would provide Plaintiff with a universal, standard "release," which was required of models by all publications in order to publish photographs with a model's image.

41.    Hayes also informed Plaintiff that a one thousand-dollar ($1,000.00) deposit equal to half the total charge would be required to be paid to Hayes for the photoshoot.  The photoshoot of Plaintiff was scheduled by Hayes for March 12, 2016 in Las Vegas, Nevada.

42.    Plaintiff accepted the offer from Hayes and paid Hayes the $1,000.00 (50%) deposit for one photoshoot, thereby securing their agreement to enter a contract with monetary consideration.

43.    In preparation for the photoshoot, Plaintiff incurred tens of thousands of

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

dollars in expenses, including for her hair, make-up, skin treatments, body-contouring, tanning, and wardrobe costs.

44.     Plaintiff appeared in Las Vegas, Nevada on that date, and the photoshoot by Hayes commenced as agreed.

45.     At the photoshoot's conclusion, while taking the final shots, Hayes verbally represented to Plaintiff that, because Hayes has many connections with many other publications that use photographs of models, Hayes could get Plaintiff's image in many more publications, but that Plaintiff would need to do another photoshoot to have other "looks" for the other publications.

46.     Relying on this representation, and because of Hayes' stated experience, success, and connections in the business, Plaintiff agreed to another photoshoot the very next day on March 13, 2016 and paid Hayes another $3,000.00 (for a total of $4,000.00 for 2 photoshoots).

47.     On January 3, 2016, Hayes stated the following on his Facebook page: "New policy for 2016. All models that want to be published must sign a publishing release utilizing their legal name and legal signature.  Signatures will be compared with DL and Passports.  2016 will bring more top published magazines covers which require proper release documentation."  Plaintiff believed this public statement from Hayes.

48.     After the second photoshoot ended and Plaintiff was just about to walk out the door to leave the studio, in a rushed manner, Hayes gave a document to Plaintiff purporting it to be the release they had previously discussed, which Hayes stated to Plaintiff was required for all models for all publications, but without giving time for the Plaintiff to read the document or to have it reviewed by her own attorney. Hayes mandated Plaintiff sign the document before Plaintiff left the studio the day of the second photoshoot.

49.     After the photoshoots had been completed, Hayes for the first time disclosed to Plaintiff that the publications he had originally represented would be

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

relatively easy to secure covers and features for the photographs of the Plaintiff, specifically Maxim, now suddenly required Plaintiff to pay monies to each of them including Maxim to secure Plaintiff's photographs on the cover and as a feature inside the publication.  Hayes represented to Plaintiff that this procedure was a standard business practice including for Maxim.  Hayes informed Plaintiff that the money was to be wired directly to Hayes and not paid directly to Maxim.  Hayes provided Plaintiff with copy of the routing information for Plaintiff to wire six-thousand dollars ($6,000) specifically in order to be published in Maxim.

50.     Hayes further represented to Plaintiff that the process could be sped up through Hayes' friend, Dirk Steenekamp, whom Hayes represented to Plaintiff as editor in chief of Maxim South Africa.  As proof of how Steenekamp could get Plaintiff's photographs on the cover and in Maxim quicker, Hayes sent a screenshot of an allegedly pre-approved cover of Maxim South Africa with Plaintiff's photographs and Plaintiff as the cover model.

51.     Believing Hayes to be forthright and believing the screenshot of the allegedly pre-approved magazine cover to be legitimate, Plaintiff wired the money to Hayes on March 17, 2016.

52.     Plaintiff is informed and believes, and thereon alleges, that Steenekamp was the editor in chief of Maxim South Africa, operated the Maxim website in South Africa, and was licensed to do so by Maxim.

53.     Subsequently, Defendants informed Plaintiff that images of her photoshoot with Hayes would be published in Maxim South Africa (in the May 2016 issue) on a cover and showcased in a feature spread in print, digital editions, websites, and social media.

54.     Because it was Plaintiff's first major cover and feature, Plaintiff spent extra money and purchased online and print versions of the Maxim South Africa (May 2016) magazine and paid a large amount for the postage to ship the print edition.

55.     In July of 2016, Hayes contacted Plaintiff and advised Plaintiff of Hayes'

1  and Steenekamp's new expanding "venture" doing photoshoots for covers of Maxim

2  Nigeria, Dubai (Middle East), Egypt and Africa.

3      56.     Hayes uploaded many posts about this "venture" on his Facebook page,

4  promoting his services to models who wished to be in Maxim's publications.

5      57.     Thereafter, towards the end of Summer 2016, Hayes and Steenekamp,

6  convinced Plaintiff that there was a great opportunity for her as a model to be

7  published on the cover and in an inside editorial of the new Maxim Nigeria, using

8  another set of 5 images that were photographed by Hayes.

9      58.     Pursuant to the instructions Hayes gave to Plaintiff, Plaintiff again

10 prepaid, this time directly to Steenekamp and his entity DHS, as Hayes ensured

11 prepaying would result in Plaintiff becoming published in the Maxim Nigeria

12 magazine.   Again, Plaintiff paid for numerous copies of the printed and online

13 magazines along with shipment cost.

14     59.     Thereafter, Hayes and Bogart failed to deliver on their promises of

15 submitting the photographs of Plaintiff to numerous publications other than Maxim.

16 Hayes and Bogart only submitted Plaintiff's photos to 2 publications.   Plaintiff

17 discovered Hayes and Bogart made one of the submissions to Lifestyle For Men

18 ("LFM") magazine with the same images that were already published in Maxim South

19 Africa. Hayes and Bogart carried out their actions without Plaintiff's prior knowledge

20 and approval.  Plaintiff was under the impression from Hayes and Bogart, that they

21 were using unpublished images of Plaintiff from the approximately 2,000

22 photographs Hayes took of Plaintiff, given that submissions of previously-published

23 photographs of Plaintiff in Maxim South Africa could not in any way contribute to

24 Plaintiff's publications in other magazines such as LFM.  As such, Plaintiff had to

25 cancel the submission to LFM.

26     60.     Plaintiff is informed and believes, and thereon alleges, that, even though

27 Hayes stated he needed to conduct two photoshoots for the numerous submissions he

28 was going to procure for Plaintiff, Hayes only used the 10 images that he used for

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

Maxim South Africa and Fake Maxim Nigeria (5 images for each), even though he had photographed approximately 2,000 total photographs of Plaintiff.

61.     Plaintiff is informed and believes, and thereon alleges, that Hayes is unlawfully selling and/or assigning ownership in and to the copyrights of the photographs of Plaintiff, from the photoshoots for which she paid, to photograph distribution companies such as APIX Syndication.

62.     Plaintiff has never received an accounting or any percentage of profits from Defendants' exploitation of Plaintiff and her images.

63.     In or around October of 2016, Defendants Hayes and Bogart refused to cooperate with the other public relations agents hired by Plaintiff, refused to retouch extra images upon Plaintiff's request, deceitfully convinced Plaintiff to unnecessarily pay for a third-party retouch-specialist, and then refused to sign a release provided by Plaintiff to allow her to self-promotion herself and her images.

64.     On October 20, 2016, Bogart sent Plaintiff an email which stated that Hayes would only sign the self-promotion release and allow Plaintiff to freely exploit the pictures for another ten-thousand-dollar ($10,000) payment to Hayes.

65.     As Plaintiff's relationships with Defendants Hayes and Bogart deteriorated, Plaintiff grew suspicious and concerned about the legitimacy of Maxim Nigeria.  On January 23, 2017, Plaintiff contacted by phone, and followed up in an email with, a former employee of Maxim, Dana Lombardi ("Lombardi"), who held herself out as the international licensing and publishing manager for Maxim. Lombardi expressed surprise when Plaintiff told her about Maxim Nigeria, Maxim Dubai, Maxim Africa and Maxim Egypt (individually and collectively the "Fake Maxims").  Lombardi stated to Plaintiff that Maxim does not produced such publications.

66.     However, on February 8, 2017, Lombardi stated that Maxim Nigeria, Maxim Dubai, Maxim Africa and Maxim Egypt had been approved by her supervisor. Lombardi had ignored a previous request from Plaintiff to review official distribution

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

numbers for the countries purportedly selling the Fake Maxims and names of official distributors.  Instead, Lombardi expressed to Plaintiff that Steenekamp is one of Maxim's best international publishers, and that Brian Hayes is a great photographer that the U.S. edition of Maxim hoped to utilize more in the future.  After further investigation, Plaintiff discovered that the Fake Maxims were never listed under the existing official international licensed publications section on the international page of the official Maxim website: wwww.maxim.com.

67.     Plaintiff is informed and believes, and thereon alleges, that Maxim originally acquired most of the content (stories, advertisements, photographs, etc.) contained in the copies of the Fake Maxims and that such content was a part of their main database to which Maxim had granted Steenekamp access thereto.

68.     Plaintiff is informed and believes, and thereon alleges that Maxim knew what the other Defendants were doing and provided access to content to be used in Defendants' versions of "Maxim."

69.     Hayes and Steenekamp represented to Plaintiff, other models, and also to the general public on social media, that the Fake Maxims were being sold on the newsstands and other marketplaces in the local countries and online.

70.     In November of 2016, online as part of proclaimed "Industry news," Steenekamp made an "official" public relations statement introducing the new Maxim Nigeria and Maxim Middle East to the public as legitimate Maxim magazines, knowing that they were fake.

71.     Plaintiff is informed and believes, and thereon alleges, that Defendants were selling and continue to sell the Fake Maxims online and in print, globally.

72.     Plaintiff is informed and believes, and thereon alleges, that no Maxim magazines are legally being sold on newsstands in the local countries and are not available for legal purchase from the Internet in the local countries due to, among other things, local religious laws.

73.     Plaintiff is informed and believes, and thereon alleges, that Maxim's

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

official policy is to pay—not charge—models for their appearances on covers and within the magazines.

74.     Plaintiff is informed and believes, and thereon alleges, that over numerous years, Defendants have made the same false-promises and misrepresentations they made to Plaintiff, to hundreds of other models and have realized close to one million five hundred thousand dollars ($1,500,000) as a result.

75.     Plaintiff is informed and believes, and thereon alleges, that in or around October 26-30, 2017 at the Las Vegas Palms Resort and Casino in Las Vegas, Nevada, Hayes organized an event for models and photographers, called "World Cover Model," using the Fake Maxims, and another non-existent version of Maxim, Maxim France, as the main vehicles of advertisement to feature Hayes' work in and to promote his services.

76.     Plaintiff is informed and believes, and thereon alleges, that Hayes collected money from businesses and individuals for attendance at his Las Vegas event, unlawfully gaining from his deceitful representations.

77.     Since January 2017, Plaintiff has contacted Maxim many times about the practices of Hayes and Steenekamp misrepresenting their connections to Maxim and their promotion and publication of the Fake Maxims using Maxim as a source identifier.

78.     Plaintiff is informed and believes, and thereon alleges, that, despite being aware of the Defendants' activities, Maxim continued to promote Steenekamp's Fake Maxims and Maxim's staff continues to publish Hayes's photography on their official website.

79.     Plaintiff is informed and believes, and thereon alleges, that, despite being aware of their inauthenticity, Maxim officials still promote Defendants' Fake Maxims on www.maxim.com.  Maxim is aware of and continues to allow Fake Maxims to be sold on online newsstands, including, but not limited to, Magster, Zinio, Apple, Google, and a variety of mobile platforms.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

### FIRST CAUSE OF ACTION

### Copyright Infringement

### 17 U.S.C. §§ 101 *et seq*. and 17 U.S.C. § 1202, *et seq*.

(Against All Defendants)

80.     All of the allegations contained within paragraphs 1 through 79 are hereby incorporated by reference as if fully set out herein.

81.     Plaintiff is the co-owner of certain photographs that are subject to six (6) separate copyright applications submitted to the U.S. Copyright Office as works made for hire (the "CC Works").

82.     In or around December 2018, Plaintiff filed an application for registration for the CC Works, paid the application filing fees, and received a confirmation of the filing back from the Copyright Office.

83.     The six application Case Numbers from the Copyright Office for the CC Works are as follows: 1-7154605573; 1-7154605522; 1-7154605436; 1-7154605400; 1-7154605246; and 1-7154605221.

84.     Plaintiff is informed and believes, and thereon alleges, that, starting in or around May of 2016 and continuing through the present, for a commercial purpose, Defendants knowingly and wrongfully copied the exact images of the CC Works (the "Infringing Works"); intentionally removed and/or altered the proper copyright management information belonging to Plaintiff; used the Infringing Works in advertisements, promotional materials, printed publications, and online publications; and offered the Infringing Works for sale and licensing to the general public, with the intent to induce, enable, facilitate, and/or conceal the infringement.

85.     Plaintiff is informed and believes, and thereon alleges, that, without authorization, the Defendants used, copied, republished, distributed and displayed to the public, worldwide, the Infringing Works on many different websites, search engines, printed publications, and commercial advertisements in violation of the Copyright Act.

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

86.     Plaintiff is informed and believes, and thereon alleges, that Defendants made the copies of the CC Works with the pre-existing knowledge that such original expressions was co-owned by Plaintiff.

87.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew, or at least recklessly disregarded the likelihood, that their use of their copy of the CC Works constituted copyright infringement.

88.     After Plaintiff notified Defendants on the Infringing Works, Defendants never removed the Infringing Work and fake content off of the of their websites, social media accounts, and/or digital newsstands.   Defendants' intentional infringing activities have continued and will continue to be to the detriment of Plaintiff, and loss and injury to Plaintiff's business and reputation in an amount to be proved at trial, and threaten to increase such losses and injuries, unless such activities are enjoined by this Court and Defendants are required to cease their unauthorized use of their copies of the Infringing Works.

89.     Plaintiff is without adequate remedy at law to prevent the continued unlawful acts of Defendants herein set forth and said acts of Defendants have resulted and will result in irreparable damage to Plaintiff unless Defendants' acts of infringement are enjoined by this Court.

90.     By reason of the acts of Defendants alleged herein, Plaintiff has suffered actual damages in an amount to be proven at trial.

91.     Due to Defendants' acts as alleged above, Defendants have obtained profits and distributions, they would not otherwise have realized but for their infringement of the CC Works.

92.     Pursuant to the Copyright Act, Plaintiff is entitled to its actual damages and disgorgement of Defendants' profits attributable to Defendants' infringement of the CC Works in an amount to be proven at trial.

/ / /

/ / /

2494.201

## SECOND CAUSE OF ACTION

### Contributory Infringement of Copyright

(Against All Defendants)

93. All of the allegations contained within paragraphs 1 through 92 above are hereby incorporated by reference as if fully set out herein.

94. Defendants, and each of them, were aware that Defendants were infringing the Infringing Works by way of their position of control in the Defendant entities.

95. Defendants, and each of them, materially contributed to and induced the other Defendants' infringing activity by supplying the means and resources for the infringement and by directing the infringing activities of the other Defendants.

96. Defendants have not acted reasonably or in good faith in response to Plaintiff's numerous conversations with Defendants regarding Defendants' infringement and repeat infringement.

97. Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of Plaintiff's rights.

98. Pursuant to the Copyright Act, Plaintiff is entitled to recovery of its actual damages and disgorgement of Defendants' profits attributable to their contributions to the infringement of the CC Works in an amount to be proven at trial. By reason of the acts of the Defendants and each of them alleged herein, Plaintiff has suffered actual damages in an amount to be proven at trial. Plaintiff is entitled to actual damages pursuant to 17 U.S.C. § 504(b) for each infringement.

99. Due to all of the acts of the Defendants and each of them as alleged above, Defendants has obtained profits they would not otherwise have realized but for the individual Defendants' contributions to the infringing activities. Accordingly, Plaintiff is also entitled to Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

100. Alternatively, Plaintiff is entitled to maximum statutory damages,

17

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

101.   Plaintiff further is entitled to her attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

102.   Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured by money.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to injunctive relief prohibiting further contributory infringements of the CC works.

### THIRD CAUSE OF ACTION

### Vicarious Infringement of Copyright

### (Against All Defendants)

103.   All of the allegations contained within paragraphs 1 through 102 above are hereby incorporated by reference as if fully set out herein.

104.   Defendants, and each of them, controlled the other Defendants' infringing activities by way of their position of control in and/or with the other Defendants.

105.   At any point, Defendants and each of them, could have stopped the infringing activities of the other Defendants by way of their position of control in and/or with the other Defendants.

106.   Defendants have not acted reasonably or in good faith in response to Plaintiff's numerous conversations with Defendants regarding Defendants' infringement and repeat infringement.

107.   Defendants' acts of infringement have been willful, intentional, and purposeful, in disregard of Plaintiff's rights.

108.   Pursuant to the Copyright Act, Plaintiff is entitled to its actual damages and disgorgement of Defendants' profits attributable to Maxim's contributions to the infringement of the CC Works in an amount to be proven at trial.  Plaintiff is entitled

18

2494.201

to recovery of its actual damages and disgorgement of Defendants' profits attributable to their vicarious infringement of the CC Works in an amount to be proven at trial. By reason of the acts of all of the Defendants and each of them alleged herein, Plaintiff has suffered actual damages in an amount to be proven at trial. Plaintiff is entitled to actual damages pursuant to 17 U.S.C. § 504(b) for each infringement.

109.   Due to all of the acts of the Defendants and each of them as alleged above, Defendants has obtained profits they would not otherwise have realized but for the individual Defendants' contributions to the infringing activities. Accordingly, Plaintiff is also entitled to Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

110.   Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

111.   Plaintiff further is entitled to her attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

112.   Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured by money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to injunctive relief prohibiting further vicarious infringements of the CC works.

## FOURTH CAUSE OF ACTION

### Intentional Fraud

(Against All Defendants)

113.   All of the allegations contained within paragraphs 1 through 112 above are hereby incorporated by reference as if fully set out herein.

114.   Plaintiff is informed and believes, and thereon alleges, that Hayes falsely represented, *inter alia*, to Plaintiff that he (i) had strong relationships with decision makers at many publications; (ii) needed to do two photoshoots of Plaintiff because

19

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

of the substantial amount of publication submissions he was going to make for Plaintiff free of extra publishing costs; (iii) would provide free public relations services to Plaintiff; (iv) needed Plaintiff to sign a standard release contract so her photos could be submitted to and published in the publications; (iv) that the industry standard purportedly required the models to pay the publication to have their photographs used by the publication; (v) that the Fake Maxims were official editions of Maxim for the respective countries or regions; (vi) that Plaintiff would be co-owner of the photographs taken by Hayes of Plaintiff; and (vii) Plaintiff could use the images for self-promotion.

115.   As stated, Plaintiff is informed and believes, and thereon alleges, that Hayes and Steenekamp (and later Lombardi) falsely represented that the Fake Maxims were legitimate Maxim publications and were distributed in the regions they were associated with.   Hayes and Steenekamp also falsely represented that the industry standard required models to pay Maxim to have their photographs used by the publication.

116.   Plaintiff is informed and believes, and thereon alleges, that Hayes knew the representations in ¶114 were false when he made them and never intended to submit Plaintiff's photographs to the substantial variety of legitimate publications he promised without any extra cost, to allow Plaintiff to be a fifty percent (50%) owner of the photographs of Plaintiff, to provide free public relations for Plaintiff, to follow industry standards regarding the protocols for getting a model into publications such as Maxim, or to provide Plaintiff with a contract that was only a simple publishing release for photographs rather than a complete waiver of all her rights.

117.   Plaintiff is informed and believes, and thereon alleges, that Hayes further knew the representations in ¶114 were false when he made them because, *inter alia*, Hayes only submitted 10 images, of the 2,000 photographs he took of Plaintiff over two photoshoots; because Plaintiff has now been informed by other models in the industry that they experienced the same issues and circumstances with Hayes as

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

20

2494.201

Plaintiff has had with Hayes; because Hayes would not allow Plaintiff to use the photographs for self-promotion; because the industry standard is that models do not pay to get their photographs in publications like Maxim according to statements from Maxim's representatives; and because Hayes, after making Plaintiff pay for the photoshoots, would not allow Plaintiff to use the photographs for self-promotion unless Plaintiff paid Hayes another $10,000.

118.    Plaintiff is informed and believes, and thereon alleges, that Hayes knew the representations in ¶115 were false when he made them since he claims he has been in the photography and publication businesses for 20 years and was closely affiliated with Maxim already and thus knew that there was no actual official distribution in the regions associated with the Fake Maxims.

119.    Plaintiff is informed and believes, and thereon alleges, that Hayes and Steenekamp knew such representations were false and intended to deceive Plaintiff into relying upon them in order to extract money and photographs from Plaintiff under the guise of industry insiders and publishers of Maxim, and people who have the ability to get models in publications like Maxim.  Plaintiff was ignorant of the truth and had no reason not to trust the representations of Hayes and Steenekamp.

120.    On January 23, 2017, Plaintiff contacted Dana Lombardi and questioned her about the legitimacy of Maxim Middle East (Dubai), Maxim Nigeria, Maxim Egypt, Maxim Africa.   Plaintiff received an email from Lombardi stating: "Unfortunately, these are not real Maxim publications. We do have a MAXIM South Africa but you have not listed that. Please send me information regarding these false publications."  The next day, Lombardi sent Plaintiff another email stating: "I wanted to reach out to you to inform you that we do have a relationship with Dirk Steenekamp the managing director of MAXIM South Africa. We have reached out to him to remedy the situation with you all. I have been informed that he in fact has been producing these magazines along with MAXIM South Africa."  Thereafter, Plaintiff discovered that Maxim publications are in fact illegal in many Muslim-dominant

21

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

countries including many of the countries where Hayes and Steenekamp assured Plaintiff she would be published.  The official licensing page on www.maxim.com listed Maxim South Africa only as a licensed edition and did not mention any fake publications licenses for them.  Plaintiff followed up with Lombardi asking: "I would like to have a proof of your written contract and valid licensing agreement between Maxim Inc. and all other publications Maxim Egypt, Maxim ME, Maxim Africa, Maxim Nigeria. …  Statistically approximate population of these regions where you claim publications exist are: Nigeria - 189M, UAI - 9.4M, Egypt- 94M, Africa - (I am still wondering is it the whole continent of Africa including SA and Nigeria?) - 1.2B. I would like to see a distribution numbers of above-mentioned publications with valid contracts with real distributor that can be verified and referenced. An[d] amount of sales, of course that would back up these numbers."

121.  On February 8, 2017, Lombardi wrote the following email to Plaintiff confirming that the publications in question were approved by her supervisor at Maxim, confirming that Maxim initiated and ordered the scam: "As previously stated, these are unequivocally <u>not</u> fake publications. They were approved by my supervisor, which led to the temporary uncertainty that I expressed when you first brought this to our attention. … Dirk Steenekamp is one of our best international publishers, and Brian Hayes is a great photographer that the U.S. edition hopes to utilize more in the future. We cannot make any representations about the claims that may have been made to you by Dirk [Steenekamp] directly; however, we are satisfied that we have sufficiently clarified the legitimacy of the publications. We have plans to share more covers of Maxim's international editions on www.maxim.com going forward."  Given that the above-mentioned Muslim countries do not allow Maxim publications of any kind, Lombardi and Maxim fraudulently deceived the public, including models and including Plaintiff.

122.  Plaintiff's subsequent investigating revealed that all the content in the Fake Maxims was initially acquired content by Maxim Inc. and some was content of

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

Maxim's main stream corporate advertisers.  Plaintiff is informed and believes, and thereon alleges, that Steenekamp had access to all this data when he was printing fake magazines and placing these data and corporate ads on online newsstands.

123.   Production of the Fake Maxim magazines continued for over a year and a half after Plaintiff notified Lombardi of the fakes.  Fake Maxims were not listed on international page of official licensees that Maxim maintains on www.maxim.com.  Yet,–Maxim promoted Maxim Africa in articles on www.maxim.com.  Today, the general public can still purchase the online fake issues, completely unaware of their inauthenticity.  Plaintiff is informed and believes, and thereon alleges, that March 2018 was the last online issue of Maxim South Africa, and it was available on Zinio.com and visible through social media.

124.   Plaintiff was unaware that the above-referenced representations were false, and Plaintiff could not, in the exercise of reasonable diligence, have discovered their falsity, given Defendants' claimed expertise and experience working in the photography and publishing industries.

125.   Given the fact that Steenekamp and Hayes are affiliated and used by Maxim, lauded by Maxim, and are named in Maxim publications and on the Maxim website, Plaintiff reasonably relied on Hayes' and Steenekamp's false representations to her detriment.

126.   During her investigating, Plaintiff discovered that one of the models who had a photoshoot with Hayes for Maxim Dubai received from Steenekamp, as proof of its legitimacy, a screen shot of email correspondence between Steenekamp and Lombardi with an attachment of an agreement concerning Maxim Dubai.  Therefore, Plaintiff is informed and believes, and thereon alleges that Maxim is defrauding the general public into spending money on purchases of Fake Maxims along with defrauding models and commercial advertisers that paid for placements in Fake Maxims, resulting in damages in the amount of several million dollars.  Members of Maxim's staff were aware of all the Fake Maxims, in part because "cover models" on

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

social media were tagging Maxim's official social media posts containing each of their alleged cover issues, many doing so from the first day of their issues were published.   Maxim also wrongfully benefitted by, among other things, incurring minimal marketing expenses and heightened exposure of their brand through their social media, which was flooded with Fake Maxims.

127.   After many weeks during which Hayes failed to achieve his promise of submitting Plaintiff's photographs to a large variety of popular publications, and after Hayes informed Plaintiff that she did not own any of the images, and after Plaintiff discovered Maxim Nigeria is a fake publication, Plaintiff realized that Hayes, Steenekamp, Lombardi, and Maxim were making fraudulent statements and had completely deceived her.

128.   Plaintiff is informed and believes, and thereon alleges, that the aforesaid conduct of Defendants is despicable and was carried out with their full knowledge of the true facts and circumstances, which ultimately affected Plaintiff's decision making.   As a direct and proximate result of the above-referenced false representations, and Plaintiff's reasonable reliance thereon, Plaintiff has been damaged in an amount of actual and other damages to be proven at trial.

129.   Plaintiff suffered some degree of injury including but not limited to economic harm in the form of actual pecuniary loss, damages because of the delay in her career, lost profits and potential future earnings from Maxim and other publications for the sale of her copyrights and rights of publicity, as well as embarrassment, humiliation, and mental anguish.

130.   Plaintiff is informed and believes, and thereon alleges, that the aforesaid conduct of Defendants was part of an act of intentional deceit with the intention and effect of causing Plaintiff and the general public loss and injury, in conscious disregard of Plaintiff's, and the general public's, rights and interest, so as to justify an award of punitive damages.

/ / /

# FIFTH CAUSE OF ACTION

## Fraud by Inducement

(Against Hayes, Bogart, SNI, 917PR and Does 1-5)

131.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 130, inclusive, and incorporates them as though fully set forth herein.

132.   Plaintiff is informed and believes, and thereon alleges, that Hayes and Bogart—through themselves, each other, and their related entities—fraudulently induced Plaintiff, through deceitful representations, that it was necessary for Plaintiff to sign a publishing release in order to be published when in reality, it is not. Accordingly, Defendants, and each of them, used their misrepresentations to induce Plaintiff into signing the unnecessary publishing release document under the false premise that it was necessary for her publication.

133.   Hayes deceived Plaintiff, and deceives the public and inexperienced models (as Plaintiff was at the time), by his Facebook and online promotional advertisements, which do not fully disclose the necessary facts and terms regarding his publishing capabilities, especially considering that he asked Plaintiff for a deposit in advance to book photoshoots, but did not disclose any terms of cancellation or refund as is required by consumer law.  A Facebook post from Hayes, dated January 3, 2016 states: "New policy for 2016… All models that want to be published must sign a publishing release utilizing their legal name and legal signature. Signatures will be compared with DL and Passports. 2016 will bring more top published magazines covers which require proper release documentation."  Accordingly, Plaintiff agreed to pay money to Hayes in exchange for his photography and retouching services and to use his free public relations services while also maintaining her equal ownership in the images with Hayes.  These terms were agreed upon in email correspondence and secured into an agreement with Plaintiff's monetary deposit.

134.   Hayes represented to Plaintiff that he was offering her a standard and

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

typical photoshoot and that (i) using Hayes and Bogart would advance her young modeling career and make profits on sales and magazine placements; (ii) Plaintiff would be co-owner of images and have to sign standard publishing release in order to have Hayes and Bogart promote and advance her and make profits.

135.   After the photoshoot ended and Plaintiff was in a doorway leaving the photo studio, Hayes rushed and pressured Plaintiff, telling her to sign what he claimed to be a standard publishing release necessary for her to be immediately submitted and published in Maxim and other magazines.

136.   As Plaintiff later discovered, she was not legally required to first sign any kind of modeling release with the photographer to become published.  All the proper procedures could have been performed after submission of the images to the publications and negotiation with the publications regarding the sale of her right of publicity in her images and likeliness and her co-ownership.  Accordingly, Hayes fraudulently induced her into believing it necessary that she first sign the claimed-simple publishing release that later turned out to not even be a publishing release (for the use of her name, image, and likeness), but rather a complete waiver of all of her rights, including but not limited to, her copyrights, her rights to negotiate the sale of her images, and her right of publicity.

137.   Pursuant to Hayes' Facebook posts, Plaintiff reasonably believed that full completion of the publishing release would occur with Hayes rather than during the next step with the publishers.  Neither Hayes nor Maxim told Plaintiff to provide photo identification for age verification concerning the publication of her adult-oriented photographs, which publishers of adult-related content require by law.  It was only after the photoshoots, that Plaintiff realized that Hayes had deceived her, because she later learned that somebody in the publishing business should have reached out to her for photo and age verification, and that never occurred.

138.   After Plaintiff paid Hayes and after Hayes photographed Plaintiff, Hayes informed Plaintiff that Maxim's standard practices required models to pay to be in the

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

magazine the same way companies do placement for advertisements.  Plaintiff is informed and believes, and thereon alleges that the statement from Hayes concerning Maxim's standard practices was premeditated by Hayes, in order to induce Plaintiff, and other models, to participate in photoshoots with him and so he could get paid regardless of Plaintiff's future publishing outcome.  Hayes convinced Plaintiff to wire him $6,000, claiming that he would give the $6,000 to Maxim.  Hayes informed Plaintiff the $6,000 payment to Maxim was required for her to be published in Maxim South Africa.  Plaintiff had no reason not to believe Hayes, because he provided her with correspondence from Steenekamp—who was held out as the official chef-in-editor of Maxim—confirming approval of her for publication.  During further investigating, Plaintiff discovered that the bank account she wired the money to belonged to a non-active entity of Hayes called SNI LLC, which listed a phony Los Angeles, California address on the bank check.  Plaintiff is informed and believes, and thereon alleges, that the bank account was used for Defendants' fraudulent collection of money including Plaintiff's wired funds.

139.  Pursuant to the instructions Hayes gave to Plaintiff, Plaintiff again prepaid, this time directly to Steenekamp and his entity DHS, as Hayes ensured prepaying would result in Plaintiff becoming published in the Maxim Nigeria magazine that later on was proven to be a complete Fake Maxim publication along with numerous other Fakes that Hayes and Steenekamp were involved in.  Again, Plaintiff paid for numerous copies of the printed and online magazines along with shipment cost.

140.  A few months later, in a pre-calculated manner, Hayes intentionally interfered with Plaintiff's modeling carrier by not submitting her to the variety of publications that he initially promised her, including but not limited to, Esquire and Sports Illustrated.

141.  On September 21, 2016, after many phone calls and a few months of follow-ups, Hayes submitted her for only two publications: Lifestyle for Men

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

27

2494.201

("LFM") and For Him Magazine ("FHM"), the latter of which was declined FHM. Plaintiff subsequently cancelled the submission to LFM once she discovered that Hayes submitted images to LFM that had already been published in Maxim South Africa. During that time, Plaintiff finally learned that Hayes deceived her into paying for a second photoshoot and acquiring more images for multiple submissions mentioned herein. Hayes refused to edit her images for future submission by other public relations agents. Thereafter, Hayes told Plaintiff that she could hire another photoshop specialist, which she did. She spent money on editing some of her own images with a photo-editing specialist and when she was ready to submit them to a magazine to be published for her own promotional purposes, Hayes refused to sign the photographer release. He also claimed to Plaintiff that she does not have any rights to her images. Hayes emailed her a fraudulently-induced "full model release" that, to Plaintiff, did not appear to be the publishing release she believed she had agreed to before the photoshoot. Hayes followed up his notice with an email demanding more money from Plaintiff. Plaintiff was shocked, because she paid for Hayes' services to shoot over 2000 images and received zero ownership or legitimate publications in return. Hayes has been unjustly enriched as a result of his actions.

142. Still in shock, Plaintiff followed up with Bogart. On October 20, 2016, Bogart stated the following in an email to Plaintiff: "Brian has NEVER and will never sign a release for a model… If you would like Brian to sign a full release giving up all his rights and value to the photos that costs $10,000 and then you own the photos and you can do whatever you would like with them."

143. On November 22, 2016, Hayes posted a Facebook statement expressing the following: "If I do agree to a free shoot then I require a full model release to be signed simply so that the images can be published in magazines and my calendars."

144. Hayes took advantage of Plaintiff by telling her that she was signing a publishing release providing her with equal copyright ownership, when in reality, Hayes deceived her into signing an agreement waiving all her rights. Hayes took

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

advantage of the fact that English is Plaintiff's second language and is inexperienced as a model.  Knowing those facts, Hayes conduct was a premeditated deceitful act.

145.   On October 13, 2018, Plaintiff performed a Google search on her name and discovered that one of the images from the photoshoot with Hayes is officially for sale by APIX Syndication with statement of their ownership.  Plaintiff has never received any profits for any use or sale of that image.  Plaintiff is informed and believes, and thereon alleges that Hayes committed fraud by inducement and deceitfully acquired intellectual property rights of images for his own benefit and monetary gain.  After conducting further investigating several months later, Plaintiff discovered that many other models were deceived in similar matter.

146.   Plaintiff reasonably relied on what Hayes told her because he had been working in the modeling industry for over twenty years and photographed a number of models for various well-known publications, including Maxim, and spoke of his close connections to and working relationship with Maxim South Africa in particular, the magazine to which Hayes claimed Plaintiff's photographs would ultimately be submitted for consideration.

147.   Defendants' actions and statements alleged herein were intentional and constitute misrepresentations material to Plaintiff's decision to enter into the agreement alleged herein, and fraudulently induced her into the agreement.  Plaintiff reasonably relied on such misrepresentation, and as a result, suffered injury including but not limited to economic harm in the form of actual pecuniary loss; damages because of the resulting delay in her career; lost profits from Maxim and other publications for the sale of her copyrights and rights of publicity; loss of potential future earnings as Plaintiff was unlawfully stripped of her copyrights, rights to negotiate the sale of her images, and her right of publicity; and damages for the resulting embarrassment, humiliation, and mental anguish.

148.   Plaintiff is informed and believes, and thereon alleges, that the aforesaid conduct of Defendants is despicable, was carried out with full knowledge of the true

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

29

2494.201

facts and circumstances that affected Plaintiff's decision making.  Plaintiff incurred an actual pecuniary loss as a direct result of the wrongdoing of Hayes, Bogart and their affiliated entities, in a sum to be proven at trial.  Plaintiff was stripped of her rights, including but not limited to, her copyrights, rights to negotiate the sale of her images, and her right of publicity.  Plaintiff also suffered damages because of the delay in her career, lost profits and potential future earnings from Maxim and other publications for the sale of her copyrights and rights of publicity, as well as embarrassment, humiliation, and mental anguish.  Plaintiff requests the Court completely void the model release acquired by Hayes and reinstate Plaintiff's rights in the images referenced herein.

## SIXTH CAUSE OF ACTION

### Fraud in the Factum

(Against Hayes, Bogart, SNI, 917PR and Does 1-5)

149.   Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 148, inclusive, and incorporates them as though fully set forth herein.

150.   Plaintiff is informed and believes, and thereon alleges, that Defendants, Hayes, Bogart, SNI, 917PR and Does 1-5, and each of them, deceitfully made misrepresentations to Plaintiff so as to render Plaintiff ignorant of the true nature of the instrument she signed while leaving the photo studio after having Hayes photograph her.

151.   Plaintiff is informed and believes, and thereon alleges, that Hayes deceived Plaintiff by his Facebook and online promotional advertisements, which did not fully disclose the necessary facts and terms regarding his publishing capabilities, especially considering that he asked Plaintiff for a deposit in advance to book photoshoots but did not disclose any terms of cancellation or refund as is required by consumer law.  A Facebook post from Hayes, dated January 3, 2016 stated: "New policy for 2016… All models that want to be published must sign a publishing release

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

30

2494.201

utilizing their legal name and legal signature. Signatures will be compared with DL and Passports. 2016 will bring more top published magazines covers which require proper release documentation." Accordingly, Plaintiff agreed to pay money to Hayes in exchange for his photography and retouching services and to use his free public relations services while also maintaining her equal ownership in the images with Hayes. These terms were agreed upon in email correspondence and secured into an agreement with Plaintiff's monetary deposit.

152.  Hayes knowingly misrepresented to Plaintiff that he was offering her a standard and typical photoshoot, whereby Plaintiff would be co-owner of the images and have to sign standard publishing release in order to have Hayes and Bogart promote and advance her young modeling career with free public relations services and make profits on sales and magazine placements.

153.  After the photoshoot ended and Plaintiff was in a doorway leaving the photo studio, Hayes rushed and pressured Plaintiff, telling her to sign what he claimed to be a standard publishing release necessary for her to be immediately submitted and published in Maxim and other magazines.  Thus, she signed it believing it provided for equal ownership in the images when it did not.  Instead, Hayes deceitfully substituted the equal ownership language with terms that attempted to completely waive Plaintiff's rights to any of her images.  Hayes took advantage of the fact that he knew Plaintiff's second language is English and that she could be easily induced by his deceit into signing the document and trusting Hayes.  Plaintiff believed and trusted Hayes, since he claimed to her that the document was just a standard publishing release (and not a complete waiver of any of her rights of any kind) and since he claimed to her to that he had been photographing models for over 20 years. At the time, Plaintiff did not think, nor had any reason to think, that any of the public advertisements made by Hayes contained misrepresentations, or that his scheme to charge models to publish them went against any official policy of Maxim.  Therefore, Hayes deceived her into believing it necessary that she a signing simple publishing

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

release, which she later realized was not even a publishing release for the use of her name, image, and/or likeness, but rather a complete waiver of all of her rights including but not limited to her copyrights, her rights to negotiate the sale of her images, and her right of publicity.

154.   The deceitfully-obtained model release was not secured by any legitimate consideration from Plaintiff.   Plaintiff reasonably believed that full completion of the publishing release would occur with Hayes rather than during the next step with the publishers.   Neither Hayes nor Maxim told Plaintiff to provide photo identification for age verification concerning the publication of her adult-oriented photographs, which publishers of adult-related content, require by law. Plaintiff reasonably relied upon the statement of Hayes to her detriment.   It was only after, that Plaintiff realized that Hayes had deceived her, because she later learned that somebody in the publishing business should have reached out to her for photo and age verification, and that never occurred.

155.   Plaintiff did not have a reasonable opportunity to obtain knowledge about the true nature of the deceitful model release document before signing it for the following reasons: (i) at the time, Plaintiff was an inexperienced model in the industry; (ii) English is her second language, which she does not understand to a level that would allow her to fully comprehend the terms; (iii) the language of the document is fatally contradictory and unintelligible in certain places; (iv) Plaintiff had the public statements of Hayes online to rely upon as well as how he held himself out to the public as an experienced photographer; (v) Hayes told Plaintiff to sign it in a rushed ad pressured manner as she was heading out the door to avoid traffic and a late night drive back home.

156.   After Plaintiff paid Hayes and after Hayes photographed Plaintiff, Hayes informed Plaintiff that Maxim's standard practices required models to pay to be in the magazine the same way companies do placement for advertisements.   Plaintiff is informed and believes, and thereon alleges that the statement from Hayes concerning

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

Maxim's standard practices was premeditated by Hayes, in order to Plaintiff and other models to participate in photoshoots with him and to get paid regardless of Plaintiff's future publishing outcome.  Hayes convinced Plaintiff to wire him $6,000, claiming that he would give the $6,000 to Maxim.  Hayes informed Plaintiff the $6,000 payment to Maxim was required for her to be published in Maxim South Africa. Plaintiff had no reason not to believe Hayes, because he provided her with correspondence from Steenekamp—who was held out as the official chef-in-editor of Maxim—confirming approval of her for publication.  During further investigating, Plaintiff discovered that the bank account she wired the money to belonged to a non-active entity of Hayes called SNI LLC, which listed a phony Los Angeles, California address on the bank check.  Plaintiff is informed and believes, and thereon alleges, that the bank account was used for Defendants' fraudulent collection of money, including Plaintiff's wired funds.

157.  Pursuant to the instructions Hayes gave to Plaintiff, Plaintiff again prepaid, this time directly to Steenekamp and his entity DHS, as Hayes ensured prepaying would result in Plaintiff becoming published in the Maxim Nigeria magazine that she later discovered is a Fake Maxim publication along with numerous other Fakes that Hayes and Steenekamp were involved with.  Plaintiff paid for numerous copies of the printed and online magazines along with shipment cost.

158.  A few months later, Hayes in a pre-calculated manner, knowing that Plaintiff is a single mother, intentionally interfered with Plaintiff's modeling carrier by not submitting her to variety of publications that he initially promised her, including but not limited to, Esquire and Sports Illustrated.

159.  On September 21, 2016, after many phone calls and a few months of follow-ups, Hayes submitted her for only two publications, one of which was declined by For Him Magazine ("FHM").  Plaintiff cancelled the other submission to LFM once she discovered that Hayes submitted images that had already been published in Maxim South Africa.  During that time, Plaintiff finally learned that Hayes deceived

2494.201

her into paying for a second photoshoot and acquiring more images for multiple submissions as the above-motioned submissions.  Hayes refused to edit her images for future submission by other PR agents.  Thereafter, Hayes told Plaintiff that she could hire another photoshop specialist, which she did.  She spent money on editing some of her own images with a photo-editing specialist and when she was ready to submit them to a magazine to be published for her own promotional purposes, Hayes refused to sign the photographer release.  He also claimed to Plaintiff that she does not have any rights to her images.  Hayes emailed her a fraudulently-induced "full model release" that, to Plaintiff, did not appear to be the publishing release she believed she had agreed to before the photoshoot.  Hayes followed up his notice with an email demanding more money from Plaintiff.  Plaintiff was shocked, because she paid for Hayes' services to shoot over 2000 images and received zero ownership or legitimate publications in return.  Hayes has been unjustly enriched as a result of his actions.

160.  On October 20, 2016, Bogart stated the following in an email to Plaintiff: "Brian has NEVER and will never sign a release for a model…. If you would like Brian to sign a full release giving up all his rights and value to the photos that costs $10,000 and then you own the photos and you can do whatever you would like with them."

161.  On November 22, 2016, Hayes posted a Facebook statement expressing the following: "If I do agree to a free shoot then I require a full model release to be signed simply so that the images can be published in magazines and my calendars."

162.  Hayes took advantage of Plaintiff by telling her that she was signing a publishing release providing her with equal copyright ownership, when in reality, Hayes deceived her into signing an agreement waiving all her rights.  Hayes took advantage of the fact that English is Plaintiff's second language and is inexperienced as a model.  Knowing those facts, Hayes conduct was a premeditated deceitful act.

163.  On October 13, 2018, Plaintiff performed a Google search on her name

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

and discovered that one of the images from the photoshoot with Hayes is officially for sale by APIX Syndication with statement of their ownership.  Plaintiff has never received any profits for any use or sale of that image.  Plaintiff is informed and believes, and thereon alleges that Hayes committed fraud by inducement and deceitfully acquired intellectual property rights of images for his own benefit and monetary gain.  After conducting further investigating several months later, Plaintiff discovered that many other models were deceived in similar matter.

164.   Plaintiff reasonably relied on what Hayes told her because he had been working in the modeling industry for over twenty years and photographed numerous models for various well-known publications, including Maxim, and spoke of his close connections to and working relationship with Maxim South Africa in particular, the magazine to which Hayes claimed Plaintiff's photographs would ultimately be submitted for consideration.

165.   Plaintiff is informed and believes, and thereon alleges, that the aforesaid conduct of Defendants is despicable, was carried out with full knowledge of the true facts and circumstances that affected Plaintiff's decision making.  Plaintiff incurred an actual pecuniary loss as a direct result of the wrongdoing of Hayes, Bogart and their affiliated entities, in a sum to be proven at trial.  Plaintiff suffered injury, including but not limited to, economic harm in the form of actual pecuniary loss; damages because of the resulting delay in her career; lost profits from Maxim and other publications for the sale of her copyrights and rights of publicity; loss of potential future earnings as Plaintiff was unlawfully stripped of her copyrights, rights to negotiate the sale of her images, and her right of publicity; and damages for the resulting embarrassment, humiliation, and mental anguish.  Plaintiff asks the Court to completely void model release acquired by Hayes and reinstate Plaintiff's rights in the images referenced herein.

/ / /

/ / /

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

COMPLAINT

2494.201

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation

### (Against All Defendants)

166.   Plaintiff hereby re-alleges and incorporates paragraphs 1 through 165 of this Complaint as if fully set forth herein.

167.   As stated, Hayes falsely represented, *inter alia*, to Plaintiff that he (i) had strong relationships with decision makers at many publications; (ii) needed to do two photoshoots because of the amount of submissions he was going to make for Plaintiff; (iii) would provide free public  relations services to Plaintiff; (iv) needed Plaintiff to sign a release contract so her photos could be published in the publications; (v) that the industry standard purportedly required the models to pay the publication to have their photographs used by the publication; (vi) that the Fake Maxims were official editions of Maxim for the respective countries or regions; (vii) that Plaintiff would be co-owner of the photographs taken by Hayes; and (viii) Plaintiff could use them for self-promotion.

168.   Plaintiff is informed and believes, and thereon alleges, that Steenekamp (i) falsely represented that the Fake Maxims were legitimate Maxim publications; (ii) that the Fake Maxims were distributed in the regions they were associated with; and (iii) that the industry standard required the models to pay the publication to have their photographs used by the publication.

169.   Plaintiff is informed and believes, and thereon alleges, that Hayes had no reasonable basis to believe the representations outlined in ¶167 because Hayes knew that he did not have the contacts at various publications that could get Plaintiff on the covers of those publications without extra money from Plaintiff.  Hayes knew that he did  not  need 2,000 photographs of Plaintiff to pitch Plaintiff's photographs to Steenekamp for placement in and on the covers of Fake Maxims, and because Hayes had carried out this scheme many times before to hundreds of models.

170.   Plaintiff is informed and believes, and thereon alleges, that Steenkamp

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

36

2494.201

had no reasonable basis to believe the representations outlined in ¶168 since he was already affiliated with Maxim at the time he made the misrepresentations and knew that there was no legal licensing or legitimate distribution of any kind in the regions associated with the Fake Maxims.

171.   Plaintiff is informed and believes, and thereon alleges, that it was the practice of Hayes to charge the models, including Plaintiff, money for their inclusion in publications.  Furthermore, Hayes, after making Plaintiff pay for the photoshoots, would not allow Plaintiff to use the photographs for self-promotion unless Plaintiff paid Hayes another $10,000.

172.   Steenekamp used his partnership with Hayes and his access to content on Maxim to make representations to Plaintiff and other models to siphon money and photographs from models.  Steenekamp also used an online public relations campaign to promote his fake publications and sell Fake Maxims to the general public.

173.   Plaintiff is informed and believes, and thereon alleges, that Hayes and Steenekamp knew, or should have known, such representations were false when they made them and had no reasonable grounds for believing them to be true because Hayes knew that he did not have the contacts at various publications that could get Plaintiff published on the covers of the publications.  Hayes knew that he did not have an ability to publish Plaintiff, with or without requesting extra money from Plaintiff, and that he did not need 2,000 photographs of Plaintiff to pitch the Plaintiff's photographs to Steenekamp for placement in and on the Fake Maxims, because Hayes had done this scheme many times before to numerous models and, given his many proclaimed years of industry experience, knew that the industry standard is not to require models to pay the publication to get their photographs published.  Hayes employed a two-step process with Plaintiff, which he continues to employ with other models, wherein he first requires money upfront for the model's photoshoot at which point he assures payment covers all of his services and promises up to and including publication; and then in a second step, suddenly demands additional money from the

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

model for publication. Meanwhile, Steenekamp should have known his representations were false since he had worked with Maxim previously and knew the Fake Maxims were not part of any legal or legitimate distribution process.

174.   Plaintiff was ignorant of the fact that Hayes' and Steenekamp's representations were false when they made them, and Plaintiff had no reason not to believe Defendants given their popularity, claimed expertise, and experience in the photography and publishing industries.

175.   Plaintiff is informed and believes, and thereon alleges, that Hayes and Steenekamp made such representations with the intent that Plaintiff would rely on them, and Plaintiff so reasonably relied.

176.   Plaintiff has been harmed by Hayes' and Steenekamp's misrepresentations in that Plaintiff spent a tremendous amount of money on the photoshoots and publishing process with Hayes and Steenekamp.

177.   Plaintiff has been further harmed by Hayes' misrepresentations in that she lost prospective job offers due to Hayes prohibiting Plaintiff from using the photographs for self-promotion unless Plaintiff first paid Hayes additional sums of money in the amount of $10,000.  Plaintiff has also lost potential profits from the sale of her images and lost money that models typically receive from Maxim for being published.

178.   Maxim promoted the Fake Maxims on their official website despite the Fake Maxims not being listed by www.maxim.com on their official list of legitimate Maxim websites.  During further investigation, Plaintiff discovered that one of the models that had a photoshoot with Hayes for Maxim Dubai received from Steenekamp, as proof of its legitimacy, a screen shot of email correspondence between him and Dana Lombardi with an attachment of an agreement concerning Maxim Dubai. Therefore, Plaintiff is informed and believes, and thereon alleges that Lombardi and Maxim marketed and encouraged the sale of fake publications to the general public in an effort to encourage Plaintiff and models like Plaintiff, as well as

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

the general public and commercial advertisers to pay for placement in and acquisition of the Fake Maxims.  Members of Maxim's staff, including Lombardi, were aware of all the fake publications, in part because "cover models" on social media were tagging Maxim's official social media posts containing each of their alleged cover issues, many doing so from the first day of their issues were published.  Maxim also wrongfully benefitted by, among other things, incurring minimal marketing expenses and heightened exposure of their brand through their social media pages, which were flooded with Fake Maxims, which in turn contributed to Maxim's overall consumer brand awareness and likely boost of sales.

179.  As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Federal Statutory False Advertising

### Section 43(a) of the Lanham Act – 15 U.S.C. § 1125(a)(1)(B)

(Against All Defendants)

180.  Plaintiff hereby re-alleges and incorporates paragraphs 1 through 179 of this Complaint as if fully set forth herein.

181.  Defendants' actions as described herein constitute direct and/or contributory violation of 15 U.S.C. § 1125(a)(1)(B), as such actions (a) occur in commercial advertising and/or promotions; and (b) misrepresent the nature, characteristics, quality, and/or geographic origin of Defendants' goods, services, and/or commercial activities.  Defendants are willfully, knowingly, and intentionally making literally false descriptions in advertising, and unless immediately enjoined by this Court, will continue to deceive, mislead, and confuse consumers into believing the legitimacy of Defendants' goods and/or services as outlined herein.

182.  Defendants Hayes, Bogart, SNI, and 917 PR use their social media, (including, but not limited to, Facebook and Instagram), websites (including but not limited www.brianbhayes.com and www.917pr.com), and other forms of

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

39

2494.201

communication to promote their services to the general public by providing posts of past, current, and future photography and public relations projects along with other disclosures and statements related to their business activities, products, and/or services in order to solicit clients and generate revenue.

183.   Plaintiff is informed and believes, and thereon alleges, that Defendants in ¶182, and each of them, scammed numerous models for money by providing misleading information concerning the terms of photoshoots and Defendants' public relations services.  A Facebook post from Hayes, dated January 3, 2016 states: "New policy for 2016… All models that want to be published must sign a publishing release utilizing their legal name and legal signature. Signatures will be compared with DL and Passports. 2016 will bring more top published magazines covers which require proper release documentation."

184.   Plaintiff is informed and believes, and thereon alleges, that Hayes misrepresented to many models that they were signing publishing releases when in actuality the models were waiving all of their rights in the images.  Hayes would lure, and continue to lure, models into signing a full release and deceive them into giving him more money by claiming to continue the publication process, despite the complete falsity of that claim.

185.   Defendants in ¶182, and each of them, promoted, marketed, and/or advertised the covers of Maxim and other publications, and the potential for publication thereon, without disclosure that all the covers were paid by the models as extra cost.  Accordingly, Defendants deceived numerous models into believing that Maxim and other the publishers require models to pay the publishers in order to be published.  Defendants lured many models into their scheme by promising that the models might get published if Hayes photographed them.

186.   Defendants in ¶182, and each of them, used and continue to employ false and deceptive advertising, promote the Fake Maxims, and lure models into having photoshoots with them.  A Facebook post from Hayes, dated July 4, 2016, states:

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

"Honored to be the exclusive cover photographer for new Maxim Middle East [Dubai] … 1st issue is on the news stands now. @917pr."

187.   A subsequent Facebook post from Hayes, dated August 6, 2016, states: "… Some magazines like Maxim SA and Maxim ME will ONLY publish my photos on their covers. We are proud to provide FREE submissions for those models that book photo shoots with me…"  Hayes and Bogart used and continue to use false and deceptive advertising to promote their free public relations services.  Neither Hayes nor Bogart disclosed at the time of agreement with Plaintiff, that models have to pay to get placements in magazines.

188.   Hayes also falsely advertised on Facebook that he never worked with fake magazines, claiming: "…. I have photographed countless models for magazine covers and spreads over past 20 years and I have never encountered a publishing company to be publishing fake or fraudulent magazines. If anyone is questioning the credibility of 917PR's publishings please feel free to contact any of the magazines yourself for verification. 917PR has many new international titles coming out in the next few months including covers for Playboy, Muscle & Fitness Hers, Maxim and FHM. We firmly believe that a PR Firm's credentials is solely based on the company's ability to get their clients published. Therefore, every month 917pr posts our clients covers and spreads on IG and FB under 917 PR for everyone to review…. Lastly, 917pr nor I will ever solicit models for paid photo shoots or PR as all our clients contact us directly for our services. 917PR is still a free service but we will soon be charging a small monthly submission fee to cover overhead and cost due to the increase in our new client base. The 917pr's contract fee will only amount to about 20% of what other PR firms are charging therefore we will still be saving our clients thousands in PR cost."

189.   From October 26-30, 2017, at the Las Vegas Palms Resort and Casino, Hayes organized and conducted an event for models and photographers using Maxim's brands as well as other brands' names, without any disclosure to the general

41

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

public that all his covers were prepaid by models. He collected money from businesses and individuals for attendance and convinced certain brands to join the event in order to bring promotional value to the event. Moet and Chandon, Palm Resort and Casino, Quinton Van Der Burch Investments and others were mentioned as corporate sponsors of his "World Cover Model" event in his Facebook video post from November 2, 2017. Hayes referenced the non-existing Maxim France in the video as well. In a separate post from November 1, 2017, Hayes included the names of some corporations and individuals who contributed to the event and also states: Maxim France is "selecting models for their covers." The event was well-promoted by Hayes on Facebook and Instagram, months before and during the event. Hayes even used the Maxim and Playboy logos to promote the event as well as numerous Fake Maxim publications including Maxim Dubai and Maxim Egypt. In an Instagram post, dated July 22, 2017, Hayes claims: "WCM offers everyone a chance to win the covers of top magazines which are GUARANTEED!" Plaintiff is informed and believes, and thereon alleges that Hayes mislead and deceived the general public including numerous businesses into investing hundreds of thousands of dollars into the event.

190. Defendants Steenekamp, UWP, and DHS deceived the public into buying fake publications alleging to be distributed to several regions of the world—online and in print—where the publications are banned. Steenekamp mislead corporate advertisers into investing to have their advertisements placed in the fake publications. Steenekamp also conspired to deceive models into paying him money in order to be published in Maxim publications. His misleading statements about Maxim Nigeria and Maxim Dubai were publicly accessible online. Sales were made on major online locations, including but not limited to, Magster, Zinio, Apple, and Google. Steenekamp promoted the Fake Maxims through social media, including but not limited to, Twitter, Facebook, and Instagram. To date, the Fake Maxims are still available for sale.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

191.   Maxim promoted the Fake Maxims on their official website, thereby deceiving the public into buying them.  Sales were made on major online locations, including but not limited to, Magster, Zinio, Apple, and Google, as well as on certain social media sites, including but not limited to, Twitter, Facebook, and Instagram. Plaintiff notified Maxim of the Fake Maxims in January of 2017, but even as of today, the Fake Maxims are available for sale.

192.   Maxim continues to publish photography by Hayes on their website and continues to ignore that he still posts Fake Maxim covers on many, if not all, of his social media accounts and websites.  Accordingly, Maxim contributes to a public perception that the actions and literally false advertisements of Hayes are completely legitimate.

193.   The statements made by the Defendants actually deceived Plaintiff and affected her purchasing decisions.  Plaintiff incurred substantial material financial expenses in retaining photography services and expenses related to the photoshoots. Plaintiff also spent money on "fake publishing" in 2 Maxim publications held out by Defendants as legitimate.  Further, Plaintiff purchased, online and in print, issues of Fake Maxim magazines and incurred the related shipping expenses in the process. Plaintiff is informed and believes, and thereon alleges, that a substantial segment of the Defendants' audience has been deceived by Defendants' conduct similar to Plaintiff.

194.   Defendants' false and deceptive representations and advertising is intended to cause consumers to pay for illegitimate goods and/or services in the photography, publishing, and magazine industries.  Defendants' deceptive conduct is material, in that it has influenced, and is likely to continue to influence, the general public's purchasing decisions, as occurred with Plaintiff.

195.   As a proximate result of Defendants' infringement, Plaintiff has been damaged in an amount to be proven at trial.

196.   Plaintiff is informed and believes, and thereon alleges that, as a

43

COMPLAINT

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

proximate result of Defendants' infringement, Defendants have unlawfully profited in an amount to be proven at trial.

197.   Defendants' acts of violating, directly and/or contributory, to Section 1125 have caused, and will continue to cause, Plaintiff irreparable harm unless they are enjoined by this Court.

198.   Defendants have acted in bad faith and have willfully engaged in literally false advertising and otherwise deceitful misrepresentations of their goods and/or services, with the intent to injure Plaintiff and deceive the general public.  This case is an exceptional because of, among other things, Defendants' baseless, unreasonable conduct pursued in bad faith, founded upon Defendants having engaged in deliberate false advertising over many years. Plaintiff seeks an order of this Court against Defendants for recovery of Defendants' profits gained as unjust enrichment, cost of action, attorneys fees, Plaintiff's lost of profits from sales of images or Maxim's pay, actual damages sustained by Plaintiff due to Defendants' conduct outlined herein, injunctive relief, treble damages if the Court so finds appropriate, and all other relief allowed under 15 U.S.C. § 1117.

### NINTH CAUSE OF ACTION

**California Statutory Unfair Competition**

**Cal. B&P Code § 17200**

(Against All Defendants)

199.   Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 198 of this Complaint as if set forth fully herein.

200.   As set forth above, Plaintiff is informed and believes, and thereon alleges that all Defendants are conducting business in Los Angeles, California.  Defendants have violated, and will likely continue to violate, California Business and Professions Code § 17200 by engaging in unfair, unlawful, and fraudulent business acts or practices as described in this Complaint, including but not limited to, disseminating or causing to be disseminated from the State of California, unfair, deceptive, untrue,

2494.201

or misleading advertising as set forth above in this Complaint, which has deceived Plaintiff and has deceived or is likely to deceive the public.  Defendants have derived and received, and will continue to derive and receive, gains, profits and advantages from Defendants' unfair competition in an amount that is not presently known to Plaintiff. By reason of Defendants' wrongful acts as alleged in this Complaint, Plaintiff has been deprived of property that would have otherwise been in her possession but for the Defendants' unfair business practices.

201.  Defendants' practices have deceived, and are likely to continue to deceive, members of the general public in the amount of several million dollars.

202.  Defendants continued to make such misrepresentations despite the fact they knew or should have known that their conduct was misleading and deceptive.

203.  By engaging in the above-described acts and practices, Defendant committed one or more acts of unfair competition within the meaning of Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.

204.  By their actions, Defendants have injured and violated the rights of Plaintiff and have irreparably injured Plaintiff, and such irreparable injury will continue unless Defendants are enjoined by this Court.  Defendants have been unjustly enriched by their conduct as Plaintiff paid substantial money and expenses to Defendants and in return did not received what Defendants' conveyed to her she would receive, including but not limited to, her equal ownership in the images taken of her as outlined herein.  Defendants have and will likely continue the same behavior with other models, businesses, and members of the general public.

205.  Plaintiff seeks an order of this Court against Defendants for restitution, disgorgement, injunctive relief and all other relief allowed under § 17200, *et seq*.

206.  Plaintiff further seeks attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 (the "private attorney general doctrine"), given that (1) this action results in the enforcement of important rights affecting the modeling industry and/or the general public as outlined herein, (2) which will significantly

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

45

2494.201

benefit from proper enforcement of those rights through this action; (3) the necessity and financial burden of private enforcement are such as to make the award appropriate; and (4) because the fees should not in the interest of justice be paid out of any recovery, given the extensive harm caused to the public by Defendants.

## TENTH CAUSE OF ACTION

### California False Advertising

### Cal. B&P Code § 17500

(Against All Defendants)

207.   Plaintiff repeats and re-alleges the allegations of paragraphs 1 through 206 of this Complaint as if set forth fully herein.

208.   As set forth above, Plaintiff is informed and believes, and thereon alleges that all Defendants are conducting business in Los Angeles, California, and each of them, have and will likely continue to knowingly disseminate, or cause to be disseminated, false, misleading, and/or deceptive statements in commercial advertisements from California and statements made in California to Plaintiff, regarding their services and products in the publishing, photographing, modeling, and/or advertising industries.  Defendants knew or reasonably should have known that they could not, and cannot, deliver the published covers and magazine photographs given their representations were and continue to be patently false and constitute material misrepresentations.

209.   This action arises in part out of important rights affecting the public interest in that Defendants' statements have and are likely to further mislead, cause confusion, cause mistake, and/or deceive the public as to the nature and reality of Defendants' services and products.

210.   Such conduct by Defendants confused, misled, and deceived Plaintiff and is likely to further confuse, mislead, and deceive the public, including other aspiring models, and members of the public as to the nature and extent of Defendants' services and products.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

211.   Plaintiff is informed and believes, and thereon alleges that Defendants' actions were undertaken in an attempt to unrightfully acquire copyrights and rights of publicity of photographs of Plaintiff and to have Plaintiff pay monies to Defendants.

212.   Plaintiff is informed and believes, and thereon alleges that Defendants' actions were undertaken willfully with full knowledge that their deceptive statements would mislead Plaintiff, other aspiring models, and would also mislead the general consuming public.

213.   Plaintiff is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from their false advertising in an amount of several million dollars.

214.   Due to Defendants' false and misleading advertising, Plaintiff and the general public have suffered and are very likely to continue to suffer great and irreparable injury, for which they have no adequate remedy at law.

215.   Plaintiff seeks restitution, disgorgement, injunctive relief, and all other relief allowable under § 17500, *et seq.*

216.   Plaintiff further seeks attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 (the "private attorney general doctrine"), given that (1) this action results in the enforcement of important rights affecting the modeling industry and/or the general public as outlined herein, (2) which will significantly benefit from proper enforcement of those rights through this action; (3) the necessity and financial burden of private enforcement are such as to make the award appropriate; and (4) because the fees should not in the interest of justice be paid out of any recovery, given the extensive harm caused to the public by Defendants.

## ELEVENTH CAUSE OF ACTION

### Brand Cancellation Due to Brand Abandonment by Naked Licensing

(Against Maxim Inc. and Does 6-10)

217.   All of the allegations contained within paragraphs 1 through 216 above are hereby incorporated by reference as if fully set out herein.

2494.201

218.   Maxim and Does 6-10 has the right to control the use of its brand and/or marks, including but not limited to Maxim's MAXIM brand.

219.   Maxim and Does 6-10 caused or permitted its brand, including but not limited to, Maxim's MAXIM brand, to lose its significance as an indicator of the origin of its goods and/or services by licensing the brand and/or mark to Hayes and Steenekamp to use the brand and/or marks to promote, advertise, and unlawfully profit from fraudulent behavior including the publishing of Fake Maxims, without adequately reserving any rights of quality control.

220.   Uncontrolled use of Maxim's brand and/or marks by the licensees referenced herein caused significant damage to Plaintiff, including deceiving her into paying for illegitimate goods and services.   The continued uncontrolled use of Maxim's brand and/or marks by the licensees threatens further public deception because, in the absence of quality control, the licensee's use of the brand and/or marks misrepresents the trademark owners' connection with the goods or services sold under the licensed brand and/or mark.

221.   In particular, Maxim failed to control the actions of its licensee Dirk Steenekamp (Maxim South Africa) as he was fraudulently taking money from models for placements in publications and never followed up with proper identification verification documentations for age verification for the models.   He also did so while failing to properly secure valid model release agreements.   Plaintiff, as well as other models, never signed any release of her or their rights to Maxim and were never asked for identification.

222.   From October 26-30, 2017, several months after Plaintiff notified Maxim and its representatives of the fraud and lack of quality control, Mr. Hayes organized an event at the Las Vegas Palms Resort and Casino, in Las Vegas Nevada called "World Cover Model," using Fake Maxims, and another non-existent version of Maxim, Maxim France, as the main vehicles of advertisement to feature Hayes' work in and to promote his services.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

223.   Maxim did not have actual control over the licensee's Mr. Steenekamp quality control measures; and any reliance by Maxim on the licensee's own quality control measures, was unreasonable and caused financial damages to the public including to many models and numerous brands. Plaintiff is informed and believes, and thereon alleges, that Maxim Inc.'s employees were involved in a co-conspiracy with Mr. Steenekamp and Mr. Hayes to produce fake publications under the Maxim brand, while also using content from Maxim's own database.  The Fake Maxims were sold on the same online newsstands as legitimate Maxim publications, but Maxim, aware of the fraud and infringing material did nothing.

224.   As a result of Maxim's brand mismanagement, Plaintiff is informed and believes, and thereon alleges, that Defendants have made the same false-promises and misrepresentations they made to Plaintiff, to hundreds of other models and have realized close to one million five hundred thousand dollars ($1,500,000) as a result.

225.   Defendants continue to post and promote the Infringing Works and Fake Maxims and other fake publications on their websites.

226.   As set forth above, Maxim's brand and/or mark has lost its significance as an indicator of the origin of its goods and/or services.

227.   Pursuant to the Lanham Act, the Court has jurisdiction to cancel the brand and/or mark belonging to Maxim, due to Maxim's unintentional abandonment of it by way of naked licensing.

## **TWELFTH CAUSE OF ACTION**

### **Negligent Retention, Hiring and Supervision**

(Against Maxim, Inc., Hayes, Steenkamp, and Doe Defendants 6-10)

228.   Plaintiff hereby re-alleges and incorporates paragraphs 1 through 227 of this Complaint as if fully set forth herein.

229.   Plaintiff is informed and believes, and thereon alleges, that former Maxim international licensing and publishing manager Dana Lombardi, her supervisor, and/or employees of Maxim, were unfit and/or incompetent to perform

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

49

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

the work for which they were hired.  Employees of Maxim Inc. failed to control the company's trademark and licensing rights and/or protocols.  Defendants, and each of them, created a fraudulent scam and co-conspiracy with Maxim South Africa licensee Dirk Steenekamp and photographer Brain Hayes in producing fake publications Maxim Dubai, Maxim Nigeria, Maxim Africa, and Maxim Egypt, totaling 33 issues. Defendants, and each of them, promoted and sold the Fake Maxims on major online newsstands and on social media including but not limited to, Magster, Zinio, Apple, Google, Twitter, Facebook, and Instagram.  As of today, the fake magazines continue to be available for sale.

230.   None of Maxim's employees, including those that maintain and control its social media accounts and web pages ever questioned the legitimacy of the above-mentioned fake publications including the laws of Muslim countries, which widely ban sexually-suggestive publications like and including Maxim due to the religious beliefs.  Models in the fake publications were tagging Maxim's official Instagram (@maximmag) and have been doing so since at least June of 2016.  Plaintiff raised the issue of Mr. Steenekamp's fraudulent activities with Maxim in January of 2017. After being notified of the fake editions, Maxim employees continued to promote Maxim South Africa and the fake edition of Maxim Africa, on maxim.com.

231.   Maxim knew or should have known that the employees referenced herein were unfit and/or incompetent to perform the photography and publishing work for which they were hired, and that their inability to perform created a particular risk to others, namely that Plaintiff and other models like her, would incur significant costs and damages as a result.  Plaintiff is informed and believes, and thereon alleges, that Maxim failed to, among other things, properly supervise their licensing department and review records of brand management and quality content control on a regular basis.

232.   The employee's inability to perform harmed the Plaintiff, many other models, and corporate advertisers that invested time, money, and/or resources into the

50

fake publications.  Maxim failed to control actions of its licensee Dirk Steenekamp (Maxim South Africa) as he was improperly taking money from models for placements in publications, while also never properly verifying the age and identification of the models and failing to properly secured valid model release agreements.  Plaintiff never signed any release of her rights to Maxim and was never asked for identification.

233.   From October 26-30, 2017, several months after Plaintiff notified Maxim and its representatives of the fraud and lack of quality control, Mr. Hayes organized an event at the Las Vegas Palms Resort and Casino, in Las Vegas Nevada called "World Cover Model," using Fake Maxims, and another non-existent version of Maxim, Maxim France, as the main vehicles of advertisement to feature Hayes' work in and to promote his services.

234.   Maxim still promotes photography claimed by Mr. Hayes on their website.

235.   Maxim's negligence in hiring, supervising, and/or retaining the employees or former employees referenced herein was a substantial factor in causing harm to Plaintiff.

236.   Plaintiff has been damaged as a direct and proximate result of the foregoing acts and seeks to recover the damages she has suffered in an amount to be proven at trial.

## THIRTEENTH CAUSE OF ACTION

### Contract Reformation/Rescission

(Against All Defendants)

237.   Plaintiff hereby re-alleges and incorporates paragraphs 1 through 236 of this Complaint as if fully set forth herein.

238.   Hayes offered his photography services, and represented that Plaintiff would get: (i) public relations services; (ii) Defendants' connections in the modeling industry; (iii) Defendants' promises to submit Plaintiff's photographs to numerous

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

Maxim-like publications without any—extra expenses; and (iv) Defendants' representations that Plaintiff would (a) retain an co-ownership in and to the copyrights in and to the photographs, and (b) would be able to use the photographs for self-promotion without any extra expenses.

239. Plaintiff is informed and believes, and thereon alleges, that Hayes knew the representations he made on behalf of the Defendants to Plaintiff were false when he made them and never intended to submit Plaintiff's photographs to the promised variety of legitimate publications, to allow Plaintiff to be a 50% owner of the photographs of Plaintiff, to provide free public relations for Plaintiff, to follow industry standards regarding the protocols for getting a model into publications such as Maxim, or to provide Plaintiff with a contract that was only a standard release for photographs because, *inter alia*, Hayes only submitted 10 images, of the 2,000 photographs he took over two photoshoots; because Plaintiff has now been informed by other models in the industry that they experienced the same issues and circumstances with Hayes as Plaintiff has had with Hayes; because Hayes would not allow Plaintiff to use the photographs for self-promotion; because the industry standard is that models do not pay to get their photographs in publications like Maxim (they are actually paid by the publication); and because Hayes, after making Plaintiff pay for the photoshoots, would not allow Plaintiff to use the photographs for self-promotion unless Plaintiff paid Hayes another $10,000.

240. Plaintiff is informed and believes, and thereon alleges, that Hayes and Steenekamp knew such representations made on behalf of the Defendants to Plaintiff were false and intended that Plaintiff rely upon them given in order to extract money and photographs from Plaintiff under the guise of industry insiders and publishers of Maxim, and people who have the ability to get models in publications like Maxim since he was affiliated with Maxim already and knew that there was no actual distribution in the regions associated with the Fake Maxims.

241. Plaintiff is informed and believes, and thereon alleges, that Hayes

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

COMPLAINT

2494.201

intentionally concealed the material facts as to the true meaning and intent of the contract by using pressure tactics, including not allowing her time to have a lawyer review documentation, the fact that Plaintiff's is not a native English speaker, as well as her lack of knowledge about the industry to conceal the real terms of the contract with Plaintiff, which was not a standard model release but rather a waiver of all rights to images.

242. Defendants now claim ownership of the copyrights (including her rights of publicity) in and to the photographs and is exploiting them worldwide in many mediums.

243. Plaintiff was ignorant of the fact that Defendants' representations were false when they made them. Plaintiff acted in complete good faith and fair dealing.

244. Plaintiff is informed and believes, and thereon alleges, that Defendants made such representations with the intent that Plaintiff would rely on them, and Plaintiff so reasonably relied.

245. Plaintiff is informed and believes, and thereon alleges, that Defendants withheld material information about the release from Plaintiff with the intent that Plaintiff would rely on it and be kept in the dark about the true nature of the contract.

246. Plaintiff was harmed by Defendants' misrepresentations in that Plaintiff gave up rights of publicity, ownership and copyrights. In good faith and trust, Plaintiff spent a substantial amount of her money, pre-paid for Defendants' services and was ripped off of her rights and potential profits by Defendants' deceit. Defendants have been unjustly enriched as a result.

247. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial.

248. Plaintiff also demands that the contract be reformed so as to reflect the true intentions of the parties whereby the contract was just a release for use of photographs in publications. In the alternative, Plaintiff seeks to rescind the contract based on Hayes and Steenekamp's fraud and undue influence.

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

249.   Upon information and belief, Plaintiff alleges that the aforesaid conduct of Defendants was part of an act of intentional deceit with the intention and effect of causing loss and injury to Plaintiff and the general public, in conscious disregard of Plaintiff's, and the general public's, rights and interest, so as to justify an award of punitive damages.

### FOURTEENTH CAUSE OF ACTION

### Vicarious Liability

(Against Maxim)

250.   Plaintiff hereby re-alleges and incorporates paragraphs 1 through 249 of this Complaint as if fully set forth herein.

251.   Maxim is responsible for the fraudulent and negligent actions of their employees and agents.

252.   Plaintiff is informed and believes, and thereon alleges, that at the time of the events mentioned in this Complaint Dana Lombardi was an official Maxim employee in position of manager of international publishing and licensing department, and it was her responsibility to supervise and control all licensing related operations of international editions of Maxim magazine including content acquisition and legitimacy of their operations.

253.   On January 23, 2017, Plaintiff contacted Lombardi and questioned her about legitimacy of Maxim Middle East (Dubai), Maxim Nigeria, Maxim Egypt, Maxim Africa.  Plaintiff received an email from Lombardi stating: "Unfortunately, these are not real Maxim publications. We do have a MAXIM South Africa but you have not listed that. Please send me information regarding these false publications." The next day, Lombardi sent Plaintiff another email stating: "I wanted to reach out to you to inform you that we do have a relationship with Dirk Steenekamp the managing director of MAXIM South Africa. We have reached out to him to remedy the situation with you all. I have been informed that he in fact has been producing these magazines along with MAXIM South Africa."  During further investigation Plaintiff discovered

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

that the Fake Maxim publications and Maxim material in general are illegal in many Muslim countries including many of the countries Hayes and Steenekamp assured Plaintiff would be published.  The official licensing page on www.maxim.com listed Maxim South Africa only as a licensed edition, and fake publications licenses were not mentioned.  Plaintiff followed up with Lombardi asking: "I would like to have a proof of your written contract and valid licensing agreement between Maxim Inc. and all other publications Maxim Egypt, Maxim ME, Maxim Africa, Maxim Nigeria. … Statistically approximate population of these regions where you claim publications exist are: Nigeria - 189M, UAI - 9.4M, Egypt- 94M, Africa - (I am still wondering is it the whole continent of Africa including SA and Nigeria?) - 1.2B. I would like to see a distribution numbers of above-mentioned publications with valid contracts with real distributor that can be verified and referenced. An[d] amount of sales, of course that would back up these numbers."

254.   On February 8, 2017, Lombardi wrote to Plaintiff the following email confirming that the issues in question were approved by her supervisor at Maxim, confirming Maxim initiated and ordered the scam from their headquarters: "As previously stated, these are unequivocally <u>not</u> fake publications. They were approved by my supervisor, which led to the temporary uncertainty that I expressed when you first brought this to our attention. …Dirk Steenekamp is one of our best international publishers, and Brian Hayes is a great photographer that the U.S. edition hopes to utilize more in the future. We cannot make any representations about the claims that may have been made to you by Dirk [Steenekamp] directly; however, we are satisfied that we have sufficiently clarified the legitimacy of the publications. We have plans to share more covers of Maxim's international editions on www.maxim.com going forward."  Given that the above-mentioned Muslim countries do not allow Maxim publications of any kind, Lombardi and Maxim participated fraudulent conduct that deceived the public into purchasing Fake Maxims.

255.   Maxim promoted the Fake Maxims on their official website.  Through

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

investigation, Plaintiff discovered that one of the models that had a photoshoot with Hayes for Maxim Dubai received from Steenekamp, as proof of its legitimacy, a screen shot of email correspondence between him and Lombardi with an attachment of an agreement concerning Maxim Dubai. Therefore, Plaintiff is informed and believes, and thereon alleges that Maxim is defrauding the general public to spend money on purchases of Fake Maxims along with defrauding models and commercial advertisers that paid for placements in Fake Maxims, resulting in damages in the amount of several million dollars. Members of Maxim's staff were aware of all the Fake Maxims, in part because "cover models" on social media were tagging Maxim's official social media posts containing each of their alleged cover issues, many doing so from the first day of their issues were published. Maxim also wrongfully benefitted by, among other things, incurring minimal marketing expenses and heightened exposure of their brand through their social media, which was flooded with Fake Maxims.

256. Plaintiff is now informed and believes, and thereon alleges, that Maxim owns Maxim South Africa website domain and therefore had the authority, oversight, and control over the actions of Steenekamp including those outlined herein.

257. Plaintiff is now informed and believes, and thereon alleges, that Maxim publicly claims in each published issue of its magazine that its content, and the copyright thereto, is owned by Maxim. Accordingly, Maxim should have gathered information on and properly vetted those contributing content to its magazines, including but not limited to, Hayes and Steenekamp, so as to avoid liability for publishing unlicensed and/or infringing content secured without proper model and photographer releases, and without proper identification verification from the models.

258. Plaintiff is now informed and believes, and thereon alleges, that Maxim had the authority, oversight, and control to keep Defendants from using the Maxim name, trademarks, goodwill, and brand as a tool to perpetrate the bad acts, as above described, and damage Plaintiff, and numerous other international and inexperienced

2494.201

models.

259.   Plaintiff is now informed and believes, and thereon alleges, that, at some point in May of 2016, Maxim became aware of the Defendants' *modus operandi,* but did nothing to stop Defendants' actions even though it had the authority, control, and right to do so, including doing nothing to stop the illegal actions of their official licensee Steenekamp and Hayes as alleged herein.  Plaintiff is informed and believes, and thereon alleges, that any reasonable publication similarly situated in the same position as Maxim would have stopped the Defendants from taking the actions complained about herein.

260.   Plaintiff is informed and believes, and thereon alleges, that certain Maxim employees failed to supervise proper and legitimate content acquisition, failed to oversee contracts concerning publishing rights and copyrights, and failed to screen models for identification to verify that models are over 18 years old.  Plaintiff never had a chance to negotiate proper transfer of any of her rights to Maxim and was never asked for identification.

261.   Plaintiff is informed and believes, and thereon alleges, that Maxim failed to act reasonably and take measures to stop Defendants from taking the actions complained about herein.

262.   Plaintiff is informed and believes, and thereon alleges, that despite being aware of the other Defendants' activities, Maxim continued to promote Steenekamp as an authorized publisher of Maxim's magazines; and Maxim's staff continues to publish Hayes's photography on their official website.  Maxim did nothing to cease the fake promotions and publications by Hayes, Steenekamp, and their related entities on social media and elsewhere online.

263.   Plaintiff is informed and believes, and thereon alleges, that despite being aware of their inauthenticity, Maxim officials still promoted Defendants' Fake Maxims on www.maxim.com, and Fake Maxims are still being sold on other online locations, including but not limited to, Magster, Zinio, Apple, and Google, as well as

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

a variety of mobile platforms.

264.   The general public is entitled to assume that the nature and quality of goods and services sold under the mark of Maxim at all licensed outlets will be consistent and predictable with the Maxim brand, official policies, and legitimate operations.  Maxim employees failed to provide brand consistency and predictability, by, among other things, allowing Fake Maxims to be sold on mainstream digital newsstands.

265.   As a direct and proximate result of Maxim's failure to act reasonably and take actions to stop Defendants, Plaintiff has been damaged in an amount to be proven at trial.

266.   Lombardi, and other members of Maxim's staff were acting within the scope of their employment when their negligence and/or fraudulent acts of their co-conspiracy with the other Defendants caused material harm to Plaintiff and the general public, including but not limited to, corporate advertisers and models.  Plaintiff is informed and believes, and thereon alleges that models have been scammed in over 33 fake publications, and that the total number of photographed models who have paid for the Maxim South Africa publication is close to 200 models.  Considering the general rates for photoshoots and costs of magazine placements, Defendants have scammed models for well over one million five hundred thousand dollars ($1,500,000), excluding other major corporate advertiser placement costs, and the total sales of fraudulent publications.  Currently, the general public can still purchase the fraudulently-created Fake Maxims.

267.   Defendants' conduct is malicious, fraudulent, oppressive, and deceitful, and therefore warrants punitive damages.

### **FIFTEENTH CAUSE OF ACTION**

### **Conversion**

### (Against Hayes)

268.   Plaintiff hereby re-alleges and incorporates paragraphs 1 through 267 of

58

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

this Complaint as if fully set forth herein.

269.   Plaintiff is informed and believes, and thereon alleges, that she was the co-owner of the photographs, taken by Hayes during the two photoshoots as alleged above, by virtue of the fact that she had paid for the photography services and believed that was the agreement between her and Hayes.

270.   Hayes would not allow Plaintiff to possess the photographs for her own self-promotion or realize revenues from their exploitation.

271.   Plaintiff was harmed by Hayes' refusal to allow her to possess the pictures and use them for self-promotion by not being able to audition for modeling jobs and Plaintiff has been unable to realize revenues from exploiting the photographs.

272.   As a direct and proximate result of the Defendants' conversion of the photographs, Plaintiff has been damaged in an amount to be proven at trial.

### SIXTEENTH CAUSE OF ACTION

### Declaratory Relief

(Against Hayes)

273.   Plaintiff hereby re-alleges and incorporates paragraphs 1 through 272 of this Complaint as if fully set forth herein.

274.   This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the copyright laws of the United States, 17 U.S.C. § 101, *et seq.*  An actual and justifiable controversy exists between Plaintiff and Hayes as to the ownership of certain photographs taken by Hayes of Plaintiff.

275.   As alleged, Plaintiff paid for the photoshoots and understood there to be an agreement between her and Hayes that she would co-own the photographs, as well as their associated copyrights.

276.   However, Plaintiff is informed and believes, and thereon alleges, that Hayes has claimed, and continues to claim, ownership over and to the photographs themselves.

277.   A decree by this Court with respect to the ownership of the photographs

and their associated copyrights is reasonably calculated to prevent needless litigation in this or other jurisdictions between the Parties and/or anyone doing business with Hayes.

278.   Unless Hayes is permanently enjoined and restrained from claiming to be the owner of the photographs, Plaintiff will suffer immediate, irreparable injury to her marketability and reputation in the market.

279.   The continuing injury to Plaintiff arising from Hayes' unlawful conduct cannot be repaired or compensated by money damages or any remedy at law.

## SEVENTEENTH CAUSE OF ACTION

### Accounting

### (Against All Defendants)

280.   Plaintiff incorporates the allegations contained within paragraphs 1 through 279, as though fully set forth herein.

281.   Plaintiff is informed and believes, and thereon alleges that, due to the conversion and fraud of the Defendants, all of the Defendants have realized revenues from the exploitation of the Copyrights.

282.   Plaintiff is informed and believes, and thereon alleges, that as co-owner of the Copyrights (including right of publicity), Plaintiff was owed all the revenues, or a share of the revenues, realized by the Defendants from the exploitation of such rights.

283.   Plaintiff is informed and believes, and thereon alleges, that all the Defendants syphoned and moved the revenues from the exploitation of the Copyrights between themselves in order to create records that could not be understood, acting with or as unregistered, improperly registered, and/or illegitimate entities mentioned herein.

284.   Plaintiff cannot calculate a sum certain of monies owed from the exploitation of the Copyrights as the amount is still unliquidated and unascertained.

285.   Plaintiff is informed and believes, and thereon alleges, that as a direct

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

60

2494.201

1   and proximate result of the Defendants' actions, they are in possession of monies

2   belonging to Plaintiff which cannot be determined without an accounting.

3       286.   Plaintiff also requests the costs and fees associated with the accounting.

## EIGHTEENTH CAUSE OF ACTION

### Constructive Trust

(Against All Defendants)

7       287.   Plaintiff incorporates the allegations contained within paragraphs 1

8   through 286, as though fully set forth herein.

9       288.   Plaintiff is informed and believes, and thereon alleges, that at all times

10  herein mentioned, Defendants, and each of them, have derived, or will in the future

11  derive, benefits from exploitation of the Copyrights (including rights of publicity),

12  which said revenues from the Copyrights belong to Plaintiff, in equity and law.

13      289.   Plaintiff is informed and believes, and thereon alleges, that the receipt

14  and retention of the Copyrights and monies, and/or ownership and use by the

15  Defendants, and each of them, is a violation of Plaintiff's rights thereto, and said

16  Defendants have undertaken said conduct to the detriment and exclusion of Plaintiff.

17      290.   By reason of the aforementioned acts of said Defendants, and each of

18  them, Plaintiff has been damaged by the loss of use of said Copyrights and monies.

19  Said Copyrights and monies are constructively being held by said Defendants, and

20  each of them, in trust for the eventual possession, use and benefit of Plaintiff; and

21  Plaintiff seeks a declaration and decree that Defendants, and each of them, are

22  constructive trustees of all money, commissions, profits, interests, revenues, and/or

23  things of value derived from Copyrights.

24      291.   Plaintiff is entitled to damages and recovery of the converted property

25  and monies.  Further, Plaintiff is entitled to receive compensation for time and costs

26  in recovering the converted property.

27  / / /

28  / / /

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

1.      For actual damages of not less than $1,000,000, pursuant to 17 U.S.C. § 504, 17 U.S.C. § 1203, 15 U.S.C. § 1117, and California common law, plus interest, according to proof;

2.      For the disgorgement of Defendants' profits, pursuant to 17 U.S.C. § 504, 17 U.S.C. § 1203, 15 U.S.C. § 1117, and/or in the amount determined to be due from Defendants as a result of such accounting and interest thereon at the legal rate;

3.      In lieu of the foregoing damages under 17 U.S.C. § 1203, statutory damages, in the amount of $25,000 with respect to each work infringed, or such other amounts as may be proper, if Plaintiff so chooses to make such election;

4.      For a permanent injunction, pursuant to 17 U.S.C. § 502 and/or 17 U.S.C. § 1203, enjoining Defendants and their respective officers, agents, servants, employees, attorneys, successors, licensees, partners, and assign, and all persons acting in concert or participants with each or any of them, from (a) directly or indirectly infringing in any manner any of Plaintiff's respective copyrights outlined herein or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the CC Works and (b) causing, contributing to, enabling, facilitating, or participating in the infringement of any of Plaintiff's respective copyrights or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the CC Works;

5.      For general and consequential damages of not less than $1,000,000, according to proof at trial;

6.      For restitution, disgorgement, and injunctive relief pursuant to California Business and Professions Code §§ 17200 & 17500, *et seq*.;

7.      For an injunction restraining and enjoining Defendants from the

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

COMPLAINT

continued false and misleading advertising pursuant to 15 U.S.C. § 1116, infringement of Plaintiff's copyrights, and fraud;

8.     All other relief allowed and appropriate under 15 U.S.C. § 1117, including but not limited to, treble damages, if the Court so finds appropriate;

9.     For brand cancellation as related to Maxim;

10.     For attorneys' fees and costs pursuant to, but not limited to, 17 U.S.C. § 1203, 15 U.S.C. § 1117, and California Code of Civil Procedure § 1021.5;

11.     For any additional costs of suit incurred herein, according to proof;

12.     For punitive damages, according to proof;

13.     For an accounting;

14.     For the imposition of constructive trust for all sums found due and owing to Plaintiff;

15.     For the appointment of a receiver to take possession of the constructive trust, and all books, reports, and records pertaining to the amounts owed to Plaintiff;

16.     For interest on amounts due and owing; and

17.     For any other relief the Court deems proper.

ADLI LAW GROUP, P.C.

Dated: January 22, 2019          By:   */s/ Dariush G. Adli*
                                         Dariush G. Adli, Esq.
                                         Drew H. Sherman, Esq.
                                         *Attorneys for Plaintiff*
                                         *Marina Pahomova*

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

COMPLAINT

2494.201

# **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial of any issues in this action so triable.

Respectfully Submitted,

DATED: January 22, 2019                    ADLI LAW GROUP PC

BY:    /s/ Dariush G. Adli
       Dariush Adli, Esq.
       Drew H. Sherman, Esq.
       *Attorneys for Plaintiff*
       *Marina Pahomova*

ADLI LAW GROUP, P.C.
www.adlilaw.com
(213) 623-6546

2494.201

64
COMPLAINT