SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

This Settlement Agreement and Release of All Claims (the "Agreement"), is made effective as of February 14, 2020 (the "Effective Date"), by and between Plaintiff and Counterclaim Defendant Marina Pahomova, ("Pahomova") and Defendant and Counterclaimant Brian B. Hayes ("Hayes"), and Defendant Nicole L. Bogart ("Bogart"). Pahomova, Hayes and Bogart may hereinafter be referred to individually as a "Party" and collectively as the "Parties".

WHEREAS, Pahomova has asserted certain claims against Hayes and Bogart and Hayes has asserted certain claims against Pahomova that are currently pending before the United States District Court, Central District of California (the "Court"), in the case styled *Marina Pahomova v. Maxim, Inc, et al.*, case no.2:19-cv-00495-RGK (JCx) (the "Lawsuit").

WHEREAS, The putative defendant named in the Lawsuit as "Swimwear Network International, LLC, a Florida limited liability company" no longer exists, and the putative defendant named as "917 PR, a business entity of unknown form" has never existed; rather, Swimwear Network International, LLC is a dissolved entity that Hayes previously operated, and "917PR" is a trade name of Bogart. "Swimwear Network International" and "SNI" are trade names of Seyah Enterprises, Inc., which is an affiliate of Hayes that Pahomova is releasing in this Agreement.

WHEREAS, the Parties wish to resolve amicably, finally and forever, any and all claims and disputes between them relating to the claims made in the Lawsuit.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

1.  Release Consideration.

In exchange for the release of all claims and counterclaims pertaining to the Lawsuit brought by the Parties to this Agreement, the Parties agree as follows:

   a. Hayes agrees:

      i) To assign to Pahomova in writing all of Hayes's interests in the copyrights to photographs depicting Marina Pahomova, as referenced in Hayes' counterclaim (the "Copyrights"), within fifteen (15) days after the completion of the condition stated in 1.b.vii.;

      ii) That Hayes has not purported or attempted to assign the Copyrights within six months prior to the Effective Date, and will not for a

period of two months after the Effective Date, assign the Copyrights to any person or entity other than Pahomova.

b. The Parties agree:

i) That they have not assigned, purported to assign or attempted to assign any of the claims that are being released, as stated in Paragraph 2.

ii) That Hayes will have no future obligation to Pahomova of any type relating to the Copyrights and shall have no obligation to cooperate in the enforcement of her interest in the Copyrights. He makes no representations or warranties with regard to the Copyrights other than what is stated in Paragraph 1(a)(ii);

iii) That the Parties will have no obligations of confidentiality or non-disparagement to each other going forward;

iv) That within ten (10) days after completion of the condition stated in 1.b.vii., that Hayes and Bogart may file a Notice or Motion pursuant to Cal. Code Civ. Proc. § 877.6 to determine the good faith of this settlement, which Pahomova will not oppose;

v) To request that the Court retains jurisdiction over any future proceedings that may arise from this Agreement. Any Notice of Settlement filed by one or more of the Parties shall include a copy of this Agreement and shall inform the Court that they have agreed to request the Court to retain such jurisdiction in the anticipated Order of dismissal following the Court's determination regarding the good faith of this settlement;

vi) That the Model Release attached as Exhibit A to Hayes' counterclaim and all other agreements or purported agreements between Pahomova (on the one hand) and Hayes and/or Bogart (on the other) shall be superseded as of the Effective Date;

vii) That within fifteen (15) days of the Effective Date, the Spagnoletti Law Firm will pay to counsel for Hayes $15,000 as and for attorneys' fees.

    c. Pahomova agrees:

        i) Within ten (10) days after the Effective Date, to seek the Court's permission to file a proposed Amendment to her Complaint, by Stipulation and [Proposed] Order submitting a copy of a proposed Amended Complaint, in the form of both attached hereto as Exhibit 1.

        ii) Pahomova shall not credit Hayes as the author, or use Hayes's name, or refer to Hayes or to Bogart or any of their respective businesses, in any way in connection with the Copyrights or the photographs, except that Pahomova may record the assignment with the United States Copyright Office entirely at her own expense.

2. Complete Release and Discharge.

In consideration for the full and timely performance of all terms and conditions of this Agreement, in the manner prescribed herein, except as may be required to enforce the terms of this Agreement, the Parties agree to completely release and forever discharge each other, and all of their respective predecessors, successors, parent companies, subsidiaries, assigns and affiliates, including current and former officers, agents, directors, managers, shareholders, employees, and representatives, from any and all claims, rights, damages, warranties, expenses, fees, costs, demands, actions, obligations, liabilities, defenses, and causes of action of any and every kind, nature and character whatsoever, whether based on a tort, contract, statute, or any other theory of recovery, and whether for compensatory, consequential or punitive damages which either Party may now have, has ever had, or may in the future have, arising from or in any way connected to the claims and disputes which were or could have been brought in the Lawsuit.

3. Waiver.

Each Party has had the benefit of counsel, has been advised of, understands and knowingly and specifically waives their rights under California Civil Code §1542, which provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

4. Compromise and No Admissions. It is understood and agreed that this is a compromise settlement and that the furnishing of the Release Consideration in Section 1

herein shall not be deemed or construed as an admission of liability or responsibility at any time for any purpose by either Party and each Party expressly denies any liability to the other.  Additionally, the Parties agree that, pursuant to any state or federal evidence provisions of similar effect, this Agreement, whether executed or not, is inadmissible in any action involving either Party to prove that either Party is responsible for any loss or damage.

5.      Confidentiality. [intentionally omitted].

6.      Notices. Any notices required or permitted to be given hereunder shall be given in writing and shall be delivered by certified mail, postage prepaid, return receipt requested, and by email, effective upon receipt, and such notices shall be addressed as follows:

If to Pahomova: Marinapahomova@yahoo.com
With a copy to: dtoy@spaglaw.com

If to Hayes:  brian@brianbhayes.com

If to Bogart:  nickie@917pr.com

If to either Hayes or Bogart, with a copy to:  rkohn@kohnlawgroup.com

7.      Representation of Legal Counsel. Each Party represents and warrants that they have read and understood this Agreement, that they had the opportunity to provide input in to the drafting of this Agreement, and that they have had the opportunity to review this Agreement with the legal counsel of their choice. Accordingly, in any construction to be made of this Agreement, it shall not be construed for or against any party, but rather shall be given a fair and reasonable interpretation, based on the plain language of the Agreement and the expressed intent of the Parties.

8.      Construction of Agreement. This Agreement is a product of negotiation and preparation by and between the Parties and their respective attorneys. The Parties therefore expressly acknowledge and agree that this Agreement shall not be deemed prepared or drafted by one party or another, or its attorneys, and will be construed accordingly.

9.      Entire Agreement; Waiver. This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements, representations, and understandings of the Parties. No supplement, modification, or amendment of this Agreement will be binding unless executed in writing by the Parties. No waiver of any of the provisions of this Agreement will be considered, or will constitute, a waiver of any other provision, and no waiver will constitute a continuing waiver. No waiver will be binding unless executed in writing by the Party making the waiver.

10. Attorney's Fees. Except as otherwise provided herein, the Parties acknowledge and agree that each of them will bear their own costs, expenses and attorneys' fees arising out of and connected with the Lawsuit, the negotiation, drafting and execution of the Agreement, and all matters arising out of or connected therewith, except that in the event a proceeding is brought by any Party hereto arising from this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs in addition to all other relief to which that Party may be entitled.

11. Counterpart and Facsimile Signatures. This Agreement may be executed in one or more counterparts, whether by facsimile transmission or otherwise, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the Parties and delivered to the other Party, it being understood that all Parties need not sign the same counterpart.

12. Assignment. This Agreement may not be assigned without the prior express written consent of the non-assigning Party.

13. Applicable Law and Jurisdiction. This Agreement shall be construed and enforced, and any disputes arising in connection therewith shall be governed by, the laws of the State of California, without giving effect to principles governing conflicts of laws. After the execution of all settlement documents and the dismissal of the action, the United States District Court, Central District of California will have exclusive jurisdiction over any proceeding arising from this Agreement.

14. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, trustors, trustees, beneficiaries, predecessors, successors, assigns, partners, officers, directors, agents, servants, employees, and all persons connected with them, including, but without limitation their attorneys.

15. Severability. If any provision of this Agreement is held invalid or unenforceable by any court with jurisdiction, it is the intent of the Parties that all other provisions of this Agreement be construed to remain fully valid, enforceable, and binding on the Parties.

16. Headings. The subject headings of the paragraphs and subparagraphs of this Agreement are included for convenience only and will not affect the construction or interpretation of any of its provisions.

17. Warranty of Authority. Each Party warrants it has the requisite authority and capacity to execute this Agreement and be bound by its terms.

18. Dismissal and Continuing Jurisdiction. If Hayes and Bogart seek the Court's determination regarding the good faith of the settlement, then within ten (10) days after the Court's determination, the Parties shall jointly file a Stipulation and [Proposed] Order for Dismissal with Prejudice and to Retain Jurisdiction for Enforcement of Settlement,

pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure. Otherwise, within twenty (20) days of the Effective Date, the Parties shall file such a Stipulation and [Proposed] Order. Any such Stipulation and the [Proposed] Order shall provide for the dismissal of the entire action with prejudice, and except as otherwise provided herein, that all Parties shall bear their own costs and attorney's fees, and that the Court is to retain jurisdiction to enforce this Agreement. The Stipulation and [Proposed] Order that is filed with the Court shall include a copy of this Agreement. At the time of filing the Stipulation and [Proposed] Order, Pahomova may also apply for permission to file the Agreement under seal, which Hayes and Bogart agree they will not oppose.

IN WITNESS WHEREOF, the Parties have duly executed and delivered this Agreement effective as of the Effective Date.

AGREED AND ACCEPTED:

Dated: February 14, 2020

_____
Marina Pahomova

Dated: February 14, 2020

_____
Brian B. Hayes

Dated: February 14,, 2020

_____
Nicole L. Bogart


APPROVED AS TO FORM AND CONTENT:

Dated: February 14, 2020        **SPAGNOLETTI LAW FIRM**

By:_____
David S. Toy

Counsel for Plaintiff and Counterclaim Defendant
MARINA PAHOMOVA

Dated: February 14, 2020          **KOHN LAW GROUP, INC.**

By: _/s/ Robert E. Kohn_____
      Robert E. Kohn

Counsel for Defendant and Counterclaimant
BRIAN B. HAYES and for Defendant
NICOLE BOGART

David S. Toy, Esq. (CA SBN 168368)
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, TX 77002
Telephone: 713 653 5600
Facsimile: 713 653 5656
Email: dtoy@spaglaw.com

Attorney for Plaintiff/Counter-Defendant
Marina Pahomova

**EXHIBIT 1**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA PAHOMOVA,<br><br>    *Plaintiff,*<br><br>    v.<br><br>MAXIM, INC., *et al.*<br><br>    *Defendants.* | Case No. 2:19-cv-00495-RGK-JC<br><br>**STIPULATION TO FILE [PROPOSED] FIRST AMENDED COMPLAINT** |

   WHEREAS, the Parties to this action have each agreed to a settlement with Plaintiff and Counterclaim Defendant Marina Pahomova ("Pahomova"), contemplating the dismissal of all claims and causes of action as between the Parties;

   WHEREAS, Pahomova, Hayes and Bogart have agreed to allow Pahomova to seek the Court's permission to file a [Proposed] First Amended Complaint which omits certain allegations about Hayes and Bogart, which are retracted by this amendment;

   WHEREAS, the [Proposed] First Amended Complaint is attached to this Stipulation as its Exhibit A;

   WHEREAS, the Parties have approved this Stipulation to File [Proposed] First Amended Complaint;

THEREFORE, PENDING THIS COURT'S APPROVAL OF THE STIPULATION, Pahomova submits for filing the [Proposed] First Amended Complaint.

IT IS SO STIPULATED.

DATED: February __, 2020

Respectfully submitted,

**SPAGNOLETTI LAW FIRM**

/s/ David S. Toy
David S. Toy
Attorney for Plaintiff and Counterclaim Defendant MARINA PAHOMOVA

DATED: February __, 2020

Respectfully submitted,

**KOHN LAW GROUP, INC.**

/s/ Robert E. Kohn
Robert E. Kohn
Attorney for Defendant and Counter-claimant BRIAN B. HAYES and for Defendant NICOLE BOGART

**Attestation Pursuant to L.R. 5-4.3.4**

I, David S. Toy, pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ David S. Toy
David S. Toy
Attorney for Plaintiff and Counterclaim Defendant MARINA PAHOMOVA

David S. Toy, Esq. (CA SBN 168368)
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone: 713 653 5600
Facsimile: 713 653 5656
Email: dtoy@spaglaw.com

Attorney for Plaintiff
Marina Pahomova

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARINA PAHOMOVA, a/k/a MARINA PAMO, an individual,<br><br>*Plaintiff,*<br><br>v.<br><br>MAXIM, INC., a Delaware corporation; BRIAN B. HAYES, an individual; NICKIE BOGART, an individual; DIRK STEENEKAMP, an individual; DHS MEDIA GROUP, a business entity of unknown form; UNTAPPED WORLD PUBLISHING, LTD, a business entity of unknown form; SWIMWEAR NETWORK INTERNATIONAL, LLC, a Florida limited liability company; and 917 PR, a business entity of unknown form; and DOES 1-15, inclusive<br><br>*Defendants.* | Case No.: 2:19-cv-00495-RGK-JC<br><br>**[Proposed] FIRST AMENDED COMPLAINT** |

Plaintiff, Marina Pahomova, ("Plaintiff") complains and alleges the following claims against Defendants, Maxim, Inc. ("Maxim"), BRIAN B. HAYES ("Hayes"), Nickie Bogart ("Bogart"), Swimwear Network International, LLC ("SNI"), 917 PR unknown registration entity ("917 PR"), Dirk Steenekamp ("Steenekamp"), DHS

Media Group ("DHS"), and Untapped World Publishing, Ltd. ("UWP"), (each a "Defendant" and collectively the "Defendants")"

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for original jurisdiction over Federal Claims in that this action arises under a claim for copyright infringement. The Court has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 for original jurisdiction over civil actions where the matter in controversy exceeds to the sum and value of $75,000 and is between citizens of different states. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

3. Plaintiff is informed and believes, and thereon alleges that this Court has personal jurisdiction over the Defendants because they have a continuous, systematic, and substantial presence within this judicial district.

## PARTIES

4. Plaintiff is a resident of Los Angeles, California.

5. Maxim is a Delaware corporation with its principal place of business in New York, New York, conducting business in Los Angeles, California.

6. Plaintiff is informed and believes, and thereon alleges that Hayes is a resident of Las Vegas, Nevada, conducting business in Los Angeles, California.

7. Plaintiff is informed and believes, and thereon alleges, that Bogart is a resident of Las Vegas, Nevada, conducting his business in Los Angeles, California.

8. Plaintiff is informed and believes, and thereon alleges, that SNI in inactive by the state registration entity that was initially registered in Florida, conducting business in Los Angeles, California.

9. Plaintiff is informed and believes, and thereon alleges, that 917 PR is an unknown registration entity, conducting business in Los Angeles, California.

10. Plaintiff is informed and believes, and thereon alleges, that Steenekamp is a citizen and resident of South Africa, conducting business in Los Angeles, California

11. Plaintiff is informed and believes, and thereon alleges, that DHS is a South African business of unknown formation, with its principal place of business in South Africa, conducting business in Los Angeles, California

12. Plaintiff is informed and believes, and thereon alleges, that UWP is a South African business of unknown formation, with its principal place of business in South Africa, conducting business in Los Angeles, California

13. Plaintiff is ignorant of the true names and capacities, whether individual, corporate, associate, partnership, or otherwise of each of the Defendants sued herein as Does 1 through 15, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiff reserves the right to name such Does as discovery from Defendants reveal their identities.

14. Plaintiff is informed and believes and thereon alleges that each of the Defendants named herein as a Doe was and is negligently, intentionally, or both negligently and intentionally responsible in some manner for the occurrences herein alleged.

## GENERAL ALLEGATIONS

15. Plaintiff is a model.

16. Plaintiff is informed and believes, and thereon alleges, that Steenekamp was the editor in chief of Maxim South Africa, operated the Maxim website in South Africa, and was licensed to do so by Maxim.

17. Subsequently, Defendants informed Plaintiff that images of her photoshoot with Hayes would be published in Maxim South Africa (in the May 2016 issue) on a cover and showcased in a feature spread in print, digital editions, websites, and social media.

18. Because it was Plaintiff's first major cover and feature, Plaintiff spent extra money and purchased online and print versions of the Maxim South Africa (May 2016) magazine and paid a large amount for the postage to ship the print edition.

19. Plaintiff is informed and believes, and thereon alleges, that no Maxim magazines are legally being sold on newsstands in the local countries and are not available for legal purchase from the Internet in the local countries due to, among other things, local religious laws.

## FIRST CAUSE OF ACTION

### Brand Cancellation

(Against Maxim Inc. and Does 6-10)

20. All of the allegations contained within paragraphs 1 through 149 above are hereby incorporated by reference as if fully set out herein.

21. Maxim and Does 6-10 has the right to control the use of its brand and/or marks, including but not limited to Maxim's MAXIM brand.

22. The uncontrolled use of Maxim's brand and/or marks by the licensees referenced herei threatens further public deception because, in the absence of quality control, the licensee's use of the brand and/or marks misrepresents the trademark owners' connection with the goods or services sold under the licensed brand and/or mark.

23. Plaintiff is informed and believes, and thereon alleges, that Maxim did not employ adequate control over the licensee's Mr. Steenekamp quality control measures; and any reliance by Maxim on the licensee's own quality control measures, was unreasonable.

24. As set forth above, Maxim's brand and/or mark has lost its significance as an indicator of the origin of its goods and/or services.

25. Pursuant to the Lanham Act, the Court has jurisdiction to cancel the brand and/or mark belonging to Maxim, due to Maxim's alleged unintentional abandonment of it by way of naked licensing.

## SECOND CAUSE OF ACTION

**Negligent Retention, Hiring and Supervision**

(Against Maxim, Inc., and Doe Defendants 6-10)

26. Plaintiff hereby re-alleges and incorporates paragraphs 1 through 160 of this Complaint as if fully set forth herein.

27. Plaintiff is informed and believes, and thereon alleges, that former Maxim international licensing and publishing manager Dana Lombardi, her supervisor, and/or employees of Maxim, failed to adequately control the company's trademark and licensing rights and/or protocols.

28. Plaintiff is informed and believes, and theron alleges, that Maxim's employeesfailed to verify the legitimacy of the above-mentioned publications being published in Muslim countries, which widely ban sexually-suggestive publications like and including Maxim due to the religious beliefs.

29. Maxim knew or should have known that the employees referenced herein caused Plaintiff and other models like her, to rely on their conduct.

30. Plaintiff never signed any release of her rights to Maxim and was never asked for identification.

31. Plaintiff has been damaged as a direct and proximate result of the foregoing acts and seeks to recover the damages she has suffered in an amount to be proven at trial.

//

//

//

## THIRD CAUSE OF ACTION

### Vicarious Liability

(Against Maxim)

32. Plaintiff hereby re-alleges and incorporates paragraphs 1 through 169 of this Complaint as if fully set forth herein.

33. Maxim is responsible for the fraudulent and negligent actions of their employees and agents.

34. Plaintiff is informed and believes, and thereon alleges, that at the time of the events mentioned in this Complaint Dana Lombardi was an official Maxim employee in position of manager of international publishing and licensing department, and it was her responsibility to supervise and control all licensing related operations of international editions of Maxim magazine including content acquisition and legitimacy of their operations.

35. The official licensing page on www.maxim.com listed Maxim South Africa only as a licensed edition, and fake publications licenses were not mentioned. Plaintiff followed up with Lombardi asking: "I would like to have a proof of your written contract and valid licensing agreement between Maxim Inc. and all other publications Maxim Egypt, Maxim ME, Maxim Africa, Maxim Nigeria. … Statistically approximate population of these regions where you claim publications exist are: Nigeria - 189M, UAI - 9.4M, Egypt- 94M, Africa - (I am still wondering is it the whole continent of Africa including SA and Nigeria?) - 1.2B. I would like to see a distribution numbers of above-mentioned publications with valid contracts with real distributor that can be verified and referenced. An[d] amount of sales, of course that would back up these numbers."

36. On February 8, 2017, Lombardi wrote to Plaintiff the following email confirming that the issues in question were approved by her supervisor at Maxim: "As previously stated, these are unequivocally not fake publications. They were approved by my supervisor, which led to the temporary uncertainty that I expressed

when you first brought this to our attention. ...Dirk Steenekamp is one of our best international publishers, and Brian Hayes is a great photographer that the U.S. edition hopes to utilize more in the future. We cannot make any representations about the claims that may have been made to you by Dirk [Steenekamp] directly; however, we are satisfied that we have sufficiently clarified the legitimacy of the publications. We have plans to share more covers of Maxim's international editions on www.maxim.com going forward."

37. Plaintiff is now informed and believes, and thereon alleges, that Maxim owns Maxim South Africa website domain and therefore had the authority, oversight, and control over the actions of Steenekamp including those outlined herein.

38. Plaintiff is now informed and believes, and thereon alleges, that Maxim publicly claims in each published issue of its magazine that its content, and the copyright thereto, is owned by Maxim.

39. Plaintiff is informed and believes, and thereon alleges, that Maxim failed to act reasonably and take measures to stop Defendants from taking the actions complained about herein.

40. The general public is entitled to assume that the nature and quality of goods and services sold under the mark of Maxim at all licensed outlets will be consistent and predictable with the Maxim brand, official policies, and legitimate operations.

## FOURTH CAUSE OF ACTION

### Declaratory Relief

(Against Hayes)

41. Plaintiff hereby re-alleges and incorporates paragraphs 1 through 190 of this Complaint as if fully set forth herein.

42. This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the copyright laws of the United States, 17 U.S.C. § 101, *et seq*. An actual and justifiable controversy exists between Plaintiff and Hayes as to the

ownership of certain photographs taken by Hayes of Plaintiff.

43. Plaintiff is informed and believes, and thereon alleges, that Hayes has claimed, and continues to claim, ownership over and to the photographs themselves.

44. A decree by this Court with respect to the ownership of the photographs and their associated copyrights is reasonably calculated to prevent needless litigation in this or other jurisdictions between the Parties and/or anyone doing business with Hayes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

1. For costs of suit incurred herein, according to proof;
2. For punitive damages, according to proof;
3. For interest on amounts due and owing; and
4. For any other relief the Court deems proper.

**SPAGNOLETTI LAW FIRM**

Dated: January 13, 2020

By: /s/ David S. Toy
David S. Toy
*Attorney for Plaintiff and Counter-Defendant Marina Pahomova*

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial of any issues in this action so triable.

Respectfully Submitted,

DATED: January 13, 2020          **SPAGNOLETTI LAW FIRM**

                                        BY:  /s/ David S. Toy
                                                 David S. Toy
                                                 *Attorneys for Plaintiff and Counter-Defendant Marina Pahomova*

[Proposed] FIRST AMENDED COMPLAINT